614 So.2d 1309 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
Irvin PIERRE, Defendant-Appellant.
No. CR 92-921.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1993.
*1310 Jerold Edward Knoll, Marksville, for State.
Dan B. McKay Jr., Bunkie, for Irvin Pierre.
Before DOUCET, YELVERTON and WOODARD, JJ.
DOUCET, Judge.
Defendant, Irvin Pierre, appeals a conviction for manslaughter and a sentence therefor of seven years at hard labor.
On January 21, 1986, thirteen-year-old Contrell Alexander, a Simmesport resident, *1311 was murdered. Alexander's grandmother reported him missing at 11:00 p.m. The next morning, Alexander's body was found in a ditch alongside "Old Highway 1" (now Highway 451) about one mile from the Simmesport corporate limits. The victim was found with a large gaping hole in the right side of his forehead. Bone, hair, and tissue fragments were found as much as twenty-five feet from the body. The authorities discovered an old fence post near the body containing blood, hair and tissue fragments. The cause of death was a severe bludgeoning to the head.
At trial, the State's star witness, Clifton Jones, recanted all his prior statements made during his plea agreement and during the trial of co-defendant, Michael Hill. Therefore, the State relied heavily on the testimony of a jailhouse informant, Robert Thomasie. Thomasie gained the confidence of defendant in the Avoyelles Parish Jail and learned of defendant's involvement in the offense. Thomasie testified that defendant admitted being with Clifton Jones, Michael Hill, and Barry Courtney in a van along with the victim, Contrell Alexander. Defendant told Thomasie that they were talking about molesting the boy and that two of them, Barry Courtney and Clifton Jones, went into a vacant house with the victim and returned with the victim wrapped in sheets. The victim was placed in the van and they began driving around. When they realized the victim was not yet dead because of his moans, they drove to a levee and took the victim out of the van. Defendant told Thomasie that "one had a tire tool and the other had a wooden object or post, or whatever, and they left with the little boy and came back without the little boy." Thomasie testified that defendant told him he was present and involved at the time of the killing.
Defendant was charged by bill of indictment on October 16, 1991, with the crime of second-degree murder, a violation of La. R.S. 14:30.1. The bill alleged that on January 21, 1986, defendant, along with Barry Courtney, Michael Hill, and Clifton Jones, Jr., killed Contrell L. Alexander, a thirteen-year-old child, with the specific intent to kill or inflict great bodily harm. At arraignment, the defendant entered a plea of not guilty and filed a motion for a speedy trial. The case was assigned for trial by jury on February 10, 1992. Later, trial was re-assigned for May 11, 1992. On February 18, 1992, defendant filed a motion for dismissal of prosecution on the basis of the unconstitutionality of La.R.S. 13:1570, and a motion for release from custody on the alleged grounds that he was denied a right to a speedy trial. The court denied both motions.
Defendant filed supervisory writs to the Third Circuit Court of Appeal complaining of the court's refusal to release him from custody due to the infringement of his right to a speedy trial. This Court denied the writ on March 17, 1992, finding that the State established just cause for delay. Defendant then applied for a supervisory writ to the Louisiana Supreme Court which was denied on April 20, 1992. The Court reserved defendant's right to re-apply if trial did not begin on its assigned date of May 11, 1992.
After denying defendant's motion to suppress the testimony of Clifton Jones, Jr., the trial commenced on May 11, 1992, and continued through May 14, 1992. The twelve person jury returned a unanimous verdict of guilty of manslaughter. On May 26, 1992, the court denied defendant's motion for post verdict judgment of acquittal and on June 23, 1992, denied his motion for a new trial. On June 26, 1992, defendant was sentenced to serve seven years imprisonment.
From this conviction and sentence, defendant appeals assigning thirteen assignments of error. One of these assignments of error was abandoned by the defendant and will not be considered.

CONSTITUTIONALITY OF LA. R.S. 13:1570
Defendant first alleges that La. R.S. 13:1570 is invalid and unconstitutional in that it fails to provide for a preliminary hearing at which the issue of whether defendant was mature and responsible enough to be tried and punished as an adult would have been considered. Defendant *1312 further alleges that the trial court erred in denying his motion for dismissal of prosecution and for release from custody invoking the court's juvenile jurisdiction, based on the unconstitutionality of La.R.S. 13:1570.
This same issue was addressed by this court in State v. Gachot, 609 So.2d 269 (La.App. 3 Cir.1992). The Gachot court held that:
".... As of January 1, 1992, the new Children's Code became effective, and the substantive provisions of La.R.S. 13:1570 were incorporated into Children's Code article 305. See official comments to Ch. Code Art. 305."
In the present case, defendant was indicted on October 16, 1991, at a time when La.R.S. 13:1570 (1984) provided:
Except as otherwise provided herein, the court shall have exclusive original jurisdiction in proceedings:
A. Concerning any child whose domicile is within the parish or who is found within the parish:

* * * * * *
(5) Who violates any law or ordinance, except a child who, after having become fifteen years of age or older is charged with having committed first degree murder, second degree murder, manslaughter, aggravated rape, or a person who, after becoming sixteen years of age or older is charged with having committed armed robbery, aggravated burglary, or aggravated kidnapping. Once such a child has been charged with having committed any offense listed in this Paragraph, the district court shall:
This court held in Gachot that La.R.S. 13:1570 was constitutional. See also State v. Perique, 439 So.2d 1060 (La.1983). Since the defendant was over 15 years old at the time of the alleged offense and was charged with second-degree murder, we find no merit in defendant's arguments.

TESTIMONY OF CLIFTON JONES
Defendant next alleges that the trial court erred in allowing Clifton Jones, Jr. to testify as a witness on behalf of the State and in allowing the State to impeach Jones once it became aware he was a hostile witness.
Initially, defendant alleges the trial court erred in overruling defendant's motion to disqualify Jones as a witness. The basis for this argument centers around the plea agreement which, defendant asserts, required Jones to give testimony at trial in conformity with his (Jones') plea bargain statement under penalty of having the plea agreement revoked. Defendant argues this is impermissible because it places the District Attorney in the position of fact finder rather than the jury, in that he decreed, prior to trial, that the plea bargain statement was true and that Jones must give conforming testimony or otherwise face serious consequences. Although defendant concedes it is permissible to require truthful testimony as part of a plea bargain, defendant objects to the requirement of giving specific testimony in the plea bargaining process when Jones had every incentive to "falsify some or all of it or to exaggerate the co-defendant's involvement and to understate his own."
Plea bargain agreements between a defendant and the State, which are premised upon the defendant providing a true and full report and thereafter testifying at trial have long been recognized in our jurisprudence. See State v. Nall, 379 So.2d 731 (La.1980). Further, it is questionable whether the defendant has standing to assert the illegality of a plea agreement between the State and Jones.
After reviewing the record, we conclude that the trial court correctly overruled the defendant's motion to disqualify Jones as a witness.
During the trial, Jones recanted the statements previously made in connection with his plea bargain. As a result, defendant asserts that the trial court erred in "permitting and in requiring Clifton Jones, Jr. to testify after he had taken the oath, made a general repudiation of all of his prior sworn testimony and claimed Fifth Amendment protection."
The State was under the belief that Clifton Jones, Jr. would be a "star witness" as *1313 he had previously testified pursuant to his plea bargain agreement at co-defendant Michael Hill's trial. See State v. Hill, 610 So.2d 1080 (La.App. 3 Cir.1992). However, Jones testified that he was threatened and coerced throughout the process by law enforcement officials, the district attorney's office and his court appointed attorneys. Jones stated he was told to lie by his attorneys and to make sure that his testimony would implicate the defendant, Irvin Pierre. Finally, Jones stated that neither he nor any of the others had killed anyone. Jones noted his desire to exercise his right to plead the Fifth Amendment. The State, although recognizing Jones' right to claim Fifth Amendment protection, alleged it had the right to ask questions even if Jones repetitively pled the Fifth. However, after conferring with new counsel, Jones returned to the stand and continued to testify without invoking the privileges afforded him under the Fifth amendment stating, "I'm glad that I had a chance to confer with another attorney about this situation. I'd be glad to answer the questions." The defendant lacks standing to allege that Jones' right to the Fifth Amendment was breached. The sole issue yet to be determined is whether the trial court permitted efforts to impeach the principal witness for the State to go beyond reasonable limits resulting in the manifest prejudice of the defendant.
At the trial of this matter, Jones alleged that he and Dale Clark spent the evening together visiting their respective girlfriends. Jones further testified that when they got back to Simmesport, a search for Contrell Alexander was going on and they joined in the search. Jones then stated that five years later he was brought in for interrogation and that every time he tried to tell his story, they would not listen. Jones testified that he was coerced into giving the inculpatory version because he was threatened with a first-degree-murder charge. This testimony is a complete reversal of his previous statements and testimony.
Because of Jones' changed testimony, the trial judge ordered a recess to allow Jones to confer with counsel. After the questioning of Jones resumed, he was specifically asked whether he had given a statement implicating himself, Barry Courtney, Michael Hill, and the defendant. Jones responded, "It was completely a lie." Thereafter, the prosecutor repeatedly questioned Jones using his prior statements as a reference. Jones countered these questions with the response that he had been lying and had falsely accused these people. Jones stated, "In other words, what I'm saying is, the entire statement that I made was a complete lie; and yes, I got up here and lied about the entire thing. You can continue to ask the questions, and I'm going to continue to tell the truth, whether you like it or not."
From this, it is clear that the State's witness, Jones, had become hostile. As a result, the State was justified in attacking his credibility under La.C.E. arts. 607 and 613.
La.C.E. art. 607 provides in pertinent part:
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
La.C.E. art. 613, which sets forth the foundation for an extrinsic attack on credibility provides:
Except as the interests of justice otherwise require, extrinsic evidence of bias, interest, or corruption, prior inconsistent statements, conviction of crime, or defects of capacity is admissible after the proponent has first fairly directed the *1314 witness' attention to the statement, act, or matter alleged, and the witness has been given the opportunity to admit the fact and has failed distinctly to do so.
Under La.C.E. art 607 and 613, the State was entitled to question Jones by directing his attention to the "statement, act, or matter alleged," specifically his previous inconsistent statements made during his plea agreement, as well as his prior testimony in the Michael Hill trial in order to impeach Jones' credibility.
Defendant also complains about the calling of five additional witnesses to impeach the testimony of Clifton Jones, Jr. However, the testimony of these witnesses was appropriate to impeach Jones' credibility. For example: When Jones testified at trial that he did not return to the carwash during the late evening or early morning of the killing, Pierre Taylor was produced by the State to testify that he indeed saw Jones at the carwash at approximately 12:30 or 1:00 o'clock in the morning. When Jones testified at trial that Detective Sayes coerced him to make his initial statements and called him a nigger, Detective Sayes was called to the stand to deny the allegation. To rebut Jones' trial testimony that his attorneys told him to lie in his plea bargain arrangement and to make sure to "hook Irvin Pierre," the State called these attorneys briefly. To rebut the testimony of Jones that he did not make a statement to the effect that he was glad to be arrested, the State called Hazel Davis to briefly testify that Jones did in fact tell her that. Accordingly, the court properly allowed Jones to testify. The State was justified in questioning Jones about prior inconsistent statements for the sole purpose of attacking his credibility under La.C.E. articles 607 and 613.

VOIR DIRE
By this assignment of error defendant alleges the trial court erred in "disallowing questioning on voir dire about prospective jurors' feelings concerning whether or not (and how frequently), witnesses testify falsely under oath."
During voir dire defense counsel repeatedly questioned juror Virginia F. McGehee about the possibility of a witness lying while under oath. Finally, the trial court, finding the point had been belabored enough, stated:
We've gone enough into the issue of how she will judge, whether somebody's telling the truth or not. I think that's been gone into enough. We can leave that and go into any other issue. Now, if you wish to lodge an objection, I'm cutting off that questioning, that subject, right now.
Although considerable latitude must be accorded defense counsel in voir dire examination, the trial judge has the "right and duty to restrict examination to matters pertaining to qualifications of jurors to serve and whenever examination strays from this purpose or becomes overly lengthy, his action in limiting examination will not be disturbed on appeal." State v. Oliver, 247 La. 729, 174 So.2d 509 (La.1965), cert. denied, 86 S.Ct. 124, 382 U.S. 862, 15 L.Ed.2d 100 (1965). In State v. James, 431 So.2d 399 (La.1983), the court held that the trial court's ruling with regard to limitations on voir dire would not be disturbed in the absence of a clear misuse of discretion.
After reviewing the designated portion of voir dire, specifically the questioning of potential juror McGehee, we conclude that the trial judge did not err in stopping defense counsel's repetitive questioning concerning this potential juror's opinion on the veracity of witnesses.

TESTIMONY OF JAILHOUSE INFORMANT
Defendant first argues that the trial court erred in ruling that Robert Thomasie was not subject to the rules of law classifying him as an agent of the State, or a "jailhouse rat," and in allowing him to give testimony of statements taken from defendant that were not covered by a Miranda warning and in violation of defendant's right to counsel. Defendant further argues that the trial judge erred in allowing testimony from Thomasie about statements allegedly made by the defendant where *1315 such testimony was not supported by sufficient notice.
Defendant was arrested on August 31, 1991, and has remained at the Avoyelles Parish Jail since that time. During his incarceration, defendant made incriminating statements to fellow inmate, Robert Thomasie, who was assigned to the Avoyelles Parish Jail from November 1991 through January 1992.
Initially, Thomasie was housed in a dorm with Clifton Jones. After gaining information about the murder of Contrell Alexander, Thomasie wrote a letter to the warden to request a talk about the case "involving the little boy that was killed about five years ago." Subsequently, Thomasie asked to be moved to another dorm because he was having trouble with Clifton Jones and he was moved to the defendant's dorm. It should be noted that Detective Clint Lemoine testified that neither he nor any of the other detectives on this case had anything to do with Thomasie's transfer.
In brief, defendant alleges that "after writing a letter to the deputies saying he had overheard incriminating remarks by Clifton Jones, ... Thomasie was placed in Irvin Pierre's cell, and the deputies even went as far as to instruct him that it was not necessary to give Miranda warnings..." However, defendant's allegations are mere speculation. The record reflects the following facts, as taken from the testimony of Thomasie and Detective Clint Lemoine:
1. Thomasie was a DOC inmate assigned to Avoyelles Parish from November 1991 through January 1992.
2. Thomasie had no convictions in Avoyelles Parish or the Twelfth Judicial District.
3. Thomasie wrote on his own a letter to the "Warden" requesting to talk to him about the case involving a little boy that was killed about 5 years ago.
4. No one ever asked or requested that Thomasie be an agent or investigate for the Avoyelles Parish Sheriff's Office.
5. Thomasie spoke to Detective Sayes for the first time on or about December 26, 1991 about what he overheard Clifton Jones say; and Irvin Pierre was not mentioned.
6. Thomasie requested to be moved to another dorm because of trouble with Jones.
7. Neither the Detective department nor anybody else connected with this case knew or had anything to do with Thomasie being transferred to the dorm where Irvin Pierre was staying.
8. No one ever advised or instructed Thomasie that it was not necessary to give Miranda Warnings prior to speaking with defendant.
9. On January 5 and 7, 1992 Thomasie wrote two letters addressed to the detectives' office requesting to see someone about defendant's statements to him and thereafter discussed same with the detectives.
After hearing the testimony of Thomasie and Detective Lemoine, the trial court concluded that "there's been nothing to indicate that he was a plant."
In United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the court suppressed a statement made by the defendant declaring:
"By intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel, the Government violated Henry's Sixth amendment right to counsel." 447 U.S. at 274, 100 S.Ct. at 2189.
However, in State v. Brown, 434 So.2d 399 (La.1983) the Louisiana Supreme Court distinguished the Henry case on the basis that in Henry the defendant made incriminating statements to a fellow prisoner who was acting under instructions as a paid informant for the government. In the present case, as in Brown, the record clearly shows that Thomasie was not a paid government informant and the State did not create a situation which was likely to induce the defendant to make incriminating statements. There is no evidence that Thomasie received any benefit from testifying in the present case. Thomasie stated he was testifying because he had children of his own.
*1316 Defendant further contends that the State gave insufficient notice of its intent to use oral statements made by the defendant to Thomasie pursuant to La.C.Cr.P. art. 716, 719, 721, and 722. A review of these articles reveals that only La.C.Cr.P. art. 716 is applicable to defendant's assignment of error.
On February 4, 1992, the State filed a "Supplemental Answer to Defendant's Motion for Discovery" setting forth the substance of defendant's statements to Thomasie. On May 11, 1992, the day of trial, the State filed notice of its intention to introduce inculpatory statements. The substance of this notice was essentially the same as in the prior answer.
In both the answer and notice the State alleged that the defendant's statements occurred "on or about January 23, and January 24, 1992." During his testimony Thomasie agreed that he spoke with the defendant "during the month of January through approximately the dates of January 23 and 24th of 1992 ..." However, defendant argues that during the hearing on the admissibility of Thomasie's testimony these statements "must have come on or prior to January 7, 1992 and not on January 23-24," as stated in the notice and answer.
La.C.Cr.P. art. 716 requires the State to inform the defendant, upon defendant's motion, of the existence of any oral statement of the defendant intended to be used at trial, along with information as to when, where and to whom such oral confession or statement was made.
The trial court, ruling on the sufficiency of notice declared:
I did fail to mention that I did not consider the difference in the dates to be crucial. There has been no showing that there was any dependence upon these dates, or that there wasthat the defense was misled in any way. There has, actually, not been a particular date nailed down as to when this took place. There has been no showing that the possible difference in dates, that's in the notice, add variance from the testimony. There's been nothing to show that those dates are crucial; and I'm not going to preface that on the failure of the notice. The court feels that the defendant was apprised of the nature of the testimony. That's the purpose of the notes.
The defendant was apprised of the State's intention to use the inculpatory statements of the defendant. Although there is a possible discrepancy concerning the dates on which defendant made the inculpatory statements to Thomasie, the substance of the statements remained the same. In State v. Toomer, 395 So.2d 1320 (La. 1981), the court held the purpose of the discovery rules is to "eliminate unwanted prejudice which could arise from surprise testimony." Toomer at 1329. In this case, defendant was well aware of the content of Thomasie's testimony. Therefore, the discrepancy in dates did not prejudice the defendant, and the testimony was correctly admitted.

JURY INSTRUCTIONS
Defendant next alleges that the trial court erred in partially denying defendant's requested jury instructions. Although it is the duty of a trial judge to give a requested charge which does not require qualification, limitation or explanation, requested charges which are already substantially given and covered by the general charge are properly refused. State v. Matthews, 380 So.2d 43 (La.1980). After reviewing both defendant's proposed jury charges, and the court's general charge to the jury, we find that the court's general charge included all of the defendant's requested special charge.

SUFFICIENCY OF THE EVIDENCE
Defendant next alleges that the guilty verdict of manslaughter is contrary to the law and evidence presented and the trial court erred in denying defendant's Motion for Post Verdict Judgment of Acquittal.
Defendant was convicted of manslaughter, a violation of La.R.S. 14:31. However, during trial defendant was not portrayed as the actual killer. Rather, defendant was depicted as a "principal" under La.R.S. 14:24 who "aided and abetted" in the commission *1317 of the offense. Defendant's argument centers around the issue of whether there was sufficient evidence presented at trial to convict defendant of the crime of manslaughter under the theory that he was a "principal" in the murder of Contrell Alexander.
La.R.S. 14:24 states that:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Essentially, the State's case revolved around circumstantial evidence placing the defendant with the victim and the other alleged malefactors. Robert Thomasie, a fellow inmate, was allowed to testify about several conversations he had with defendant. The trial court determined that these statements made by the defendant to Thomasie were exceptions to the hearsay rule as they were admissions or confessions by the defendant.
Thomasie stated that the defendant told him that he, Clifton Jones, Michael Hill, and Barry Courtney were riding around in a van and they picked up the victim. They began talking about molesting the victim and they subsequently stopped at a vacant house. The victim, along with Barry Courtney and Clifton Jones, went into the house. When Jones and Courtney came out of the house the victim was wrapped up in a sheet. They placed him in the van and went riding around. During the ride the victim began moaning and they realized he was not dead. They went to a location by a levee, took the victim out of the van, and "[O]ne had a tire tool, the other one had a wooden object, post, or whatever, and they left with the little boy and came back, without the little boy." This was the extent of Thomasie's testimony.
Since Thomasie refers to the group as "they," it is not clear what acts were committed by which members of the group and whether all or part of the group was involved at various times. However, Thomasie, testifying at trial, responded affirmatively to the question, "... did this defendant, Irvin Pierre, tell you that he was present, and was involved at the time of the killing of Contrell Alexander?"
Under the Jackson standard, an appellate court must determine that viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact would have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. State v. Honeycutt, 438 So.2d 1303 (La. App. 3 Cir.), writ denied, 443 So.2d 585 (La.1983); State v. Morris, 414 So.2d 320 (La.1982). In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). See also State v. Chism, 436 So.2d 464 (La.1983). In State v. Porretto, 468 So.2d 1142 (La.1985), the court held that there is no stricter standard of review for circumstantial evidence.
This is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis for the conviction. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden.

Porretto 468 So.2d at 1146.
Rather, the language of La.R.S. 15:438, "[W]hen the conviction is based on circumstantial evidence, such evidence must exclude every reasonable hypothesis of innocence," is just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails. State v. Captville, 448 So.2d 676 (La.1984).
The State also presented direct evidence of defendant's involvement in the offense. Detective Venable testified that the victim's body was found on the morning of January 22, 1986, on old La. Hwy. 1 bordering *1318 a levee near Simmesport, Louisiana. Detective Venable further testified that an old fence post was found at the scene with the victim's hair, blood, and tissue fragments on it. The State also presented the testimony of Dr. George A. McCormick, the State's expert forensic pathologist, who corroborated Thomasie's testimony concerning the two weapons mentioned by defendant. Dr. McCormick testified that the cause of death was due to a series of blows to the head which caused severe skull fractures, lacerations, or tearing and loss of brain. He further testified these wounds were consistent with being struck by a post or the socket portion of a lug wrench. The direct evidence also included the testimony of David Antoine, who placed the defendant, Clifton Jones, Jr., Michael Hill, Barry Courtney, and the victim together near Jones' van in front of the Washington Teenage Center in the early evening on the night of the offense. Moreover, David Antoine, along with Pierre Taylor, testified that they saw Clifton Jones, Jr. washing his van at approximately 12:30 a.m. on January 22, 1986.
After reviewing the evidence presented at trial under the Jackson standard, we conclude that sufficient evidence was adduced to support a reasonable trier of fact in a conclusion beyond a reasonable doubt that every reasonable hypothesis of innocence on the part of Irvin Pierre was excluded and that Pierre was a principal in the crime.

EXCESSIVE SENTENCE
La.C.Cr.P. art. 881.1 provides in full:
A. (1) Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
(2) The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.
B. If a motion is made or filed under Paragraph A of this Article, the trial court may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence.
C. The trial court may deny a motion to reconsider sentence without a contradictory hearing.
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review. (emphasis added)
No motion to reconsider defendant's sentence was filed. Defense counsel merely objected to the sentence and assigned it as error at the sentencing hearing. This failure to file a motion to reconsider sentence precludes the defendant from raising the claim of excessiveness on appeal.
Accordingly, Pierre's conviction for manslaughter and sentence of seven years at hard labor are affirmed.
AFFIRMED.