631 So.2d 427 (1994)
STATE of Louisiana
v.
Irvin PIERRE.
No. 93-K-0893.
Supreme Court of Louisiana.
February 3, 1994.
Dan B. McKay, Jr., Bunkie, for applicant.
Richard P. Ieyoub, Atty. Gen., New Orleans, Eddie Knoll, Dist. Atty., David E. Lafargue, Marksville, for respondent.
PER CURIAM.
The defendant was charged by grand jury indictment with second degree murder in violation of La.R.S. 14:30.1. After nineteen hours of deliberation over the course of two days, a jury found him guilty of manslaughter. The trial court thereafter sentenced the defendant to seven years at hard labor. On appeal, the Third Circuit affirmed the defendant's conviction and sentence. State v. Pierre, 614 So.2d 1309 (La.App. 3rd Cir. 1993). Among other assignments of error, the court of appeal rejected the defendant's claim that the state had proved no more than his mere presence at the scene of the victim's murder and had otherwise failed to show that he had aided and abetted the commission of the offense. Id., 614 So.2d at 1316-18. We granted the defendant's application to consider the correctness of that ruling and now reverse.
On January 22, 1986, Avoyelles Parish deputies found the body of thirteen-year-old Contrell Alexander wrapped in an army blanket on a deserted stretch of old Highway One, near Simmesport, Louisiana. Alexander had been savagely beaten to death with a tire iron, wielded with such force that the impression of its lug remained on the victim's body, and with a fence post discarded on the scene. The parish coroner found evidence that the victim had been raped within 24 hours of his death. Investigation of the murder eventually led to the arrest of Clifton Jones and a statement by Jones on August 31, 1991, placing himself at the scene of the murder with Michael Hill, Barry Courtney, and the defendant. In that statement, Jones admitted driving the moribund body of Contrell in his van out to Highway One where the victim was eventually killed, but blamed Courtney and Hill for the murder. Jones told the deputies that he and the defendant had both been intimidated by the older Hill and had not played an active role in the commission of the crime.
*428 In return for a guilty plea to a reduced charge of manslaughter, and a sentence of 21 years at hard labor, Jones appeared as a state's witness at Hill's trial, which ended in a verdict of second degree murder. The state called Jones as its principal witness at the defendant's trial but was surprised when Jones completely recanted his taped statement and his testimony at Hill's trial. The state made extensive use of Jones's prior statement and testimony to impeach the witness's disclaimers. The court properly instructed jurors on two occasions, however, that they could not rely on those statements as evidence of the defendant's guilt. The state therefore asked jurors to throw Jones's testimony "out of the window," in all respects but one. Jones, the defendant, and Robert Thomasie, had all spent time together in the Avoyelles Parish jail at the end of 1991 and the beginning of 1992. Jones admitted at trial that he had warned the defendant not to talk about Alexander's murder to Thomasie, whom he correctly suspected of informing for the authorities.
The state also asked jurors to consider the evidence provided by three other witnesses. David Antoine testified that he had seen Hill, Jones, Courtney, the defendant, and the victim together at the Washington Teenage Center in Simmesport on the evening of January 21, 1986, the night of Alexander's murder. Antoine then saw Jones early the next morning washing out his van. Pierce Taylor had also observed Jones cleaning his van at approximately 1:00 a.m. on the morning of January 22, 1986.
Robert Thomasie also testified for the state. Thomasie had written two letters from the parish prison to the authorities, the first on January 5, 1992, and the second two days later. Both letters were introduced at trial. In the first, Thomasie identified Jones, Hill, Courtney and the defendant by their initials and noted that the defendant "claims he was not there but seems to know all about it." In the second, Thomasie recorded the defendant's admission that he had accompanied the others inside the abandoned home where the victim was then raped by Hill and Jones. According to this letter, the defendant and Courtney had gone back to Jones's van several minutes before Jones and Hill emerged from the house with the victim's body. The defendant blamed Hill and Jones for the subsequent murder. He placed the tire iron in Jones's hand and the fence post in Hill's.
At trial, Thomasie testified that the defendant told him that only two persons, Courtney and Jones, had gone inside the abandoned home with the victim where the rape occurred. According to Thomasie, the defendant also informed him that "they" had been riding around when they picked up Alexander; that after leaving the abandoned home, "they" realized that the victim was not dead; that after driving out to the deserted location where the body was found, "they" took "the little boy out of the van. One had a tire tool, the other one had a wooden object, post, or whatever, and they left with the little boy and came back, without the little boy."
The state readily conceded at trial that the defendant did not personally strike any of the blows which ended Alexander's life and asked jurors to convict him as a principal in that offense. All persons "concerned in the commission of a crime" are principals, La.R.S. 14:24, but this rule has important qualifications. Only those persons who knowingly participate in the planning or execution of a crime are principals. State v. Knowles, 392 So.2d 651 (La.1980). Mere presence at the scene is therefore not enough to "concern" an individual in the crime. State v. Schwander, 345 So.2d 1173 (La. 1977). Moreover, "an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state." State v. Holmes, 388 So.2d 722, 726 (La.1980). In this case, the state charged defendant with a specific intent homicide under the provisions of La.R.S. 14:30.1(1). The state therefore had to show more than the defendant's direct or indirect involvement with the rape of the victim in the abandoned house shortly before the murder. The state had to show that the defendant specifically intended Contrell Alexander's death.
The trial court properly instructed the jury according to these principles and jurors labored long and hard over the course of two days to apply them. In the end, however, *429 rational jurors could only speculate about the defendant's role in Alexander's death. To the extent that the defendant could directly implicate Jones in the rape and murder of the victim, Jones's advice to him in the Avoyelles Parish Prison not to talk with Thomasie may have signalled nothing more than an attempt to influence and silence an eyewitness to the crime. The defendant's admissions to Thomasie placed him on the scene, and the details he provided about the rape of Alexander and the bludgeons used to kill him spoke for the reliability of those statements. Nevertheless, only Thomasie's notes made on January 7, 1992, provided any evidence that the defendant had been inside the abandoned house when the victim was raped. Thomasie's trial testimony contradicted those notes, and all of the evidence available to the jury placed the defendant in the van at the time the victim was brought outside wrapped in what became a shroud.
Jurors had no direct or circumstantial evidence that the defendant counseled or procured the others to kill Alexander, or that he participated in the actual murder. Thomasie's testimony made clear that the defendant used the all-inclusive "they" even when referring in context to Courtney and Jones. Jurors knew from the extent of his self-contradiction and the testimony of David Antoine and Pierre Taylor that Jones lied in his trial testimony when he denied any involvement in the murder. Even if jurors disobeyed the court's cautionary instructions about the proper use of Jones's prior inconsistent statements, however, they could find no reliable answers in those statements about the degree of the defendant's involvement, if any. Jones testified at Hill's trial that the defendant opened the back door of his van when Hill and Courtney emerged from the abandoned house with the victim's body. In his statement of August 31, 1991, which broke the case, however, Jones indicated that Hill was the one who opened the rear door and that the defendant had remained in the front seat of the van, staring fixedly out of the windshield while the victim was then beaten to death on old Highway 1.
The due process standard of review in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), preserves the role of the jury as the factfinder in the case but it does not allow jurors "`to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.'" State v. Mussall, 523 So.2d 1305, 1311 (La.1988) [quoting 2 C. Wright, Federal Practice & Procedure, Criminal 2d § 467 (2d ed. 1982)]; see also State v. Lubrano, 563 So.2d 847 (La.1990). A jury's finding that the accused aided and abetted in the commission of the crime therefore "cannot be `mere speculation based upon guilt by association.'" State v. Schwander, supra, 345 So.2d at 1175 [quoting State v. Williams, 310 So.2d 513, 515 (La.1975) ]. The evidence at trial did not prove beyond a reasonable doubt that the defendant specifically intended to kill the victim so as to make him a principal in the crime.
The defendant's conviction for manslaughter is therefore reversed, and he is ordered discharged from custody on that offense.
CONVICTION AND SENTENCE REVERSED; DISCHARGE FROM CUSTODY ORDERED.
ORTIQUE, J., not on panel.