962 So.2d 1190 (2007)
STATE of Louisiana, Appellee,
v.
Ryan SMITH, Appellant.
No. 42,302-KA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 2007.
Rehearing Denied September 13, 2007.
Opinion Dissenting from Denial of Rehearing September 13, 2007.
*1192 Margrett Ford, for Appellant.
Paul J. Carmouche, District Attorney, Lea Hall, Catherine M. Estopinal, Assistant District Attorneys, for Appellee.
Before STEWART, PEATROSS & MOORE, JJ.
PEATROSS, J.
A jury found Defendant, Ryan Marie Smith, guilty of armed robbery. The trial court sentenced Defendant to 12 years at hard labor without benefit of parole, probation or suspension of sentence. Defendant now appeals. For the reasons set forth below, we modify Defendant's conviction and remand for resentencing.

FACTS
On August 9, 2005, during heavy rain, Tammy Rogers pushed her shopping cart to her car at the Mansfield Road Wal-Mart in Shreveport. She testified that, as she was placing bags in her vehicle and while holding an umbrella, a Hispanic man got out of a small, white, four-door vehicle and approached her. The man grabbed Ms. Rogers' purse from the shopping cart, ran back to his vehicle and then sped away. Ms. Rogers was able to see at least two other people in the vehicle, but was unable to give a more complete description of the suspect because the incident happened so quickly. She also was unable to tell if the man was holding anything because his hands were down at his side.
On August 11, 2005, detectives in the white collar crime division of the Shreveport Police Department received a telephone tip informing them that a white female and a Hispanic male, driving a white Kia Rio, were responsible for passing stolen checks at a local Kentucky Fried Chicken ("KFC") restaurant. In a subsequent call, the detectives received an address (8953 Twelve Oaks Drive) of where the car could be found. Detectives located the vehicle at the address and, after questioning the homeowner, were informed that the car was being driven by the homeowner's niece, Ryan Marie Smith and her boyfriend, Raul Jorge Castro ("Castro").
While on the scene, the detectives learned that the vehicle had been reported stolen from Glen Forest, Arkansas on August 4, 2005. Once the detectives learned that the vehicle was stolen, it was searched and property belonging to Tammy Rogers was discovered in the vehicle, in addition to several guns. Defendant and Castro were initially arrested for possession of stolen property. After continued investigation, the detectives were able to verify the robbery of Tammy Rogers. Both Defendant and Castro were subsequently charged with the armed robbery of Ms. Rogers.
Castro[1] pled guilty as charged to armed robbery, while Defendant pled not guilty and elected to proceed to a jury trial in the matter. A jury found Defendant guilty as charged. As stated, the trial court sentenced her to 12 years at hard labor without benefit of probation, parole or suspension of sentence.

*1193 DISCUSSION
Defendant attacks her conviction on two grounds. In her first assignment of error, she asserts that the evidence was insufficient to support a conviction of armed robbery because the State failed to prove that the perpetrators used force or intimidation. In her second assignment of error, Defendant submits that the evidence was insufficient to convict her as a principal to armed robbery. For reasons discussed below, we find that Defendant was a principal, but only to the crime of simple robbery, and find that the evidence is sufficient to support a finding of use of force or intimidation. We, therefore, initially discuss the second assignment of error first.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.

Principal to the Crime
Defendant argues that the jury was not presented with evidence beyond a reasonable doubt to prove that she was a principal to armed robbery. Defendant alleges that she had no knowledge that a weapon would be used in the commission of the offense. The State alleges that Defendant's claim that she was unaware that Castro would use a gun in the commission of the robbery was a determination to be made by the jury in evaluating the credibility of the witnesses. Additionally, the State argues that Defendant did not protest Castro's use of the weapon and that Defendant actively used the proceeds from the robbery.
La. R.S. 14:24 provides that:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
All principals to a crime are not necessarily guilty of the same grade of offense. State v. Doucet, 93-1523 (La.App. 3d Cir.5/4/94), 638 So.2d 246. An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427; State v. King, 06-554 (La.App. 5th Cir.1/16/07), 951 So.2d 384. To be a principal to armed robbery, the State must prove beyond a reasonable doubt that a defendant knew that her co-offender would arm himself with a dangerous weapon. State v. Doucet, supra.
*1194 The State argues that its witnesses established that Defendant was sufficiently involved in the planning and execution of the robbery to be properly held as a principal.
Ms. Rogers testified she was in the parking lot of Wal-Mart on August 9, 2005, loading bags into her SUV. Since it was raining quite heavily, she was holding an umbrella as she placed her items in the vehicle. When a small white vehicle pulled up near her, Ms. Rogers initially believed the person might need her shopping cart. A Hispanic male jumped out of the vehicle, grabbed Ms. Rogers' purse from her shopping cart and ran back and jumped into the waiting vehicle, which then sped off. Ms. Rogers noted that there were others in the vehicle, but was unable to give any further description of the robber as the incident happened so quickly. Ms. Rogers testified that she saw the robber holding his hand down, but she was unable to tell if he was holding anything.
According to her testimony, Ms. Rogers' stolen purse contained a small amount of cash (probably less than $10), her wallet with a debit card, and at least two credit cards, her checkbook, social security cards, a cell phone and other various items. Some of the stolen items were later returned to Ms. Rogers. Several checks were written on Ms. Rogers' account; however, she incurred no financial loss as a result of the forgeries. She identified photocopies of various documents as items that were in her purse at the time of the robbery. She also identified a picture of the stolen Kia Defendants were driving as resembling the getaway car.
Cody Duos, Defendant's 17-year-old cousin, testified that Defendant and her boyfriend, Castro, were staying at his house on August 9, 2005. Sometime in the early evening, Cody and his younger brother Dillon rode to Wal-Mart with Defendant and Castro "to get some stuff to eat or some groceries." According to Cody, he and Dillon sat in the back seat of the car while Defendant drove with Castro sitting in the passenger seat. Prior to leaving Cody's house, Castro talked about taking the license plate off of the car in which they were riding.
Cody testified that, once they arrived at Wal-Mart, they began driving up and down the aisles of the parking lot. After a while, Castro got into the back seat of the car. As they rode around, both Defendant and Castro discussed looking for people with umbrellas. After circling the parking lot for another minute or two, they spotted the victim and noted that she would be an easy snatch. According to Cody, Defendant stopped the vehicle and both Defendant and Castro got out of the vehicle and took the victim's purse. Cody noticed Castro had a gun in his hand at the time he got out of the car.
Also, according to Cody, Castro pointed the gun at the victim "like a little above her head just a little bit" as the bag was snatched. Once Defendant and Castro returned to the vehicle, Defendant drove away. Defendant then drove to an area near Colquitt Road where the purse was thrown into a wooded area. Cody testified that Defendant asked both him and his younger brother to throw the purse into the woods, but both of them refused to do so. After leaving the wooded area, Defendant drove around and got lost before stopping to ask for directions.
Prior to returning home, Cody recalled making stops at a KFC where one of the checks from the victim's purse was used to purchase chicken. The group also went to AutoZone and then to a bank where Defendant attempted to use the victim's cards. Defendant then drove back to Cody's home. At some point after the robbery, Defendant and Castro both *1195 threatened to harm Cody, Dillon and their family if they told about the incident.
Detective Alan Davidson of the Caddo Parish Sheriff's Office testified that he was assigned to the white collar crime division when his sergeant received an anonymous phone call regarding stolen checks being issued at KFC. The caller described the individuals involved as a Mexican male and a redheaded female and the car as a white Kia. Along with others, Detective Davidson went to the address given by the tipster where they made contact with the homeowner, Calla Anderson, Defendant's aunt. During the search of the white Kia, several guns were found, as well as a "Crown Royal bag" containing documents bearing the name "Tammy Rogers."
Detective Chris Knighton, also of the Caddo Parish Sheriff's white collar crime task force, testified that he was involved in the investigation of the robbery. According to Detective Knighton, he and other detectives made contact with Defendant at 8953 Twelve Oaks. Detective Knighton was responsible for obtaining information on the stolen Kia and interviewing Cody. Detective Knighton was also responsible for recovering the victim's stolen purse based on the information he had obtained from Cody.
The State also called Castro to testify. In addition to his testimony, the parties entered into evidence by stipulation an affidavit of acknowledgment executed by Castro. Neither party attested to the veracity of the document. The document essentially states that Castro acted alone in the commission of the crime and that Defendant was not involved. The parties also entered into evidence by stipulation a copy of the guilty plea transcript wherein Castro pled guilty to the instant charge.
Although called by the State, Castro testified that Defendant was unaware that he was planning to rob the victim, despite the fact that he had indicated that Defendant was involved when he pled guilty to the charges the day prior. Castro maintained that he was unsure of what he had admitted to during his guilty plea and stated, "I wasn't getting any counsel to the best of my ability." Castro also testified, "I had no use of force, intimidation, or nothing toward the victim." After a lengthy direct examination, Castro admitted that Defendant was involved in the offense, that she knew the robbery would take place and that a gun was used during the commission of the offense. Later, Castro stated that Defendant's only involvement was being in the vehicle, but he was the one who actually took the purse. On cross-examination, Castro again admitted his guilt in the offense and reiterated that he executed the affidavit of acknowledgment denying Defendant's involvement.
Detective Michael McDaniel testified regarding his involvement in the investigation of the offense. Detective McDaniel basically reiterated the testimony of the other investigating officers that, after receiving a tip, Defendant and Castro were found at a residence in possession of several guns and the victim's property, in addition to a stolen vehicle. Detective McDaniel also testified that he interviewed Defendant at his office, which was recorded by hidden camera and was played for the jury.
As seen in the recording, after Defendant was advised of her Miranda rights, she was questioned regarding the robbery. Defendant initially denied her involvement in the crime, but later acknowledged that she was involved. Defendant indicated that the car she traveled in was not stolen, but was lent to them by a friend, Tracy Kennedy. After several minutes of questioning, however, Defendant admitted that a purse was stolen from a lady at Wal-Mart. Defendant stated, "We took a lady's purse."
*1196 When further questioned, Defendant denied using a gun during the robbery or having any knowledge that a gun was used. Defendant indicated that, at the time the purse was stolen, her cousin Cody was driving and his brother Dillon was in the front passenger seat. According to Defendant, everyone in the car knew that the robbery was going to take place. Defendant stated that Castro exited the vehicle, went around to the back of the car and removed the purse from the shopping basket. Defendant heard the victim scream, "Give me back my purse." After driving away from the scene, Defendant recalled Cody driving to a neighborhood where the purse was dumped.
After the presentation of the State's case in chief, Defendant testified on her own behalf. On the day of the robbery, Defendant and Castro, along with Defendant's cousins, Cody and Dillion, left her aunt's house traveling to Wal-Mart. She drove until they got to Wal-Mart when she let Cody drive at his request. She did not remember a discussion or planning of the robbery, but "it happened."
Defendant's account of the event was, "We stopped the vehicle. Castro got out with the gun in his hand, stole the purse out of the lady's buggy, jumped back in the car and we took off." Cody then drove to a neighborhood where either Cody or Dillon got out of the car and threw the purse into the woods. According to Defendant, she only handed the victim's check to the cashier at KFC, but she did not write the check. Defendant testified that she never intended that anything happen other than going to Wal-Mart for food.
On cross-examination, Defendant testified that she saw Castro with a silver gun during the robbery of Ms. Rogers. Defendant explained that she initially lied to police because she knew the consequences of being in the vehicle at the time the robbery was committed. Defendant also acknowledged, "I was coming off of ice[2]," at the time she made statements to the investigating officers. Defendant consistently denied intentionally robbing the victim.
By the testimony of Cody, the State established that Defendant drove to the scene of the offense and cruised the parking lot looking for an "easy" victim. The testimony established that Defendant suggested that they look for an easy victim to rob. If believed by the jury, the testimony of the witness indicates that Defendant was the driver of the getaway vehicle and that Defendant was involved in the planning, commission and, later, an attempted coverup of the offense. By all aspects of the definition of principal to the offense, Defendant could be found guilty as a principal based on any of her actions before, during and after the offense.
In addition to the testimony of the witnesses, the jury was also presented with the taped confession of Defendant wherein she acknowledged her participation in the offense. During her trial testimony, Defendant denied her involvement in the commission of the offense. She indicated that she had been under the influence of drugs for several weeks prior to making the Statement and that she was unaware of what she was saying at the time of the confession. Defendant also testified that she was unaware of the fact that a weapon would be used during the crime.
The jury chose to further disregard Castro's testimony that Defendant did not participate in the commission of the offense or that she lacked any knowledge that the offense would be committed. During Defendant's trial, Castro initially *1197 testified that Defendant had not participated in the commission of the offense; and, when queried about this change from his statement at his guilty plea hearing the previous day, he indicated he had not understood what he was saying when he positively indicated that both he and Defendant committed the robbery. Later in his testimony, Castro acknowledged that Defendant had in fact participated in the robbery.
The trier of fact was responsible for determining the credibility of the witnesses in this case; and, apparently, the jury chose to believe the testimony of Defendant's young cousin, Cody, as opposed to Defendant and Castro. Such credibility determinations are within the province of the jury and should not be disturbed by this court. The fact that Castro's testimony vacillated on numerous occasions does not negate the other evidence presented that established Defendant's participation in the planning and commission of the offense. We find, therefore, that Defendant was a principal to the robbery.
The evidence is insufficient, however, to establish that Defendant had any knowledge or intent that Castro would arm himself with a dangerous weapon. In her testimony, Defendant denied that she had any knowledge that Castro planned to arm himself with a weapon or that a weapon was even present in the car before the event, nor do any of the other witnesses provide any evidence that Defendant knew or anticipated that Castro would arm himself with a weapon. She did not have the requisite mental state, therefore, to be a principal to armed robbery.
Defendant did knowingly participate in planning all other aspects of the robbery. As explained below, the evidence supports a conviction of simple robbery for this offense as it concerns Defendant. In accordance with La. C. Cr. P. art. 821,[3] this court, therefore, modifies the verdict rendered by the jury and renders a conviction on the lesser included responsive offense of simple robbery. We remand this case to the trial court for resentencing in accordance with La. R.S. 14:65.

Force or Intimidation
Defendant contends that the State failed to present sufficient evidence to prove all of the essential elements of the charged offense, specifically, Defendant alleges that the State failed to prove that the robbery was committed through the use of force or intimidation. Force or intimidation is an element of the amended conviction of simple robbery requiring us to address this point of error.
To convict a defendant of simple robbery, the State is required to prove: (1) a taking (2) of anything of value (3) from a person or in the immediate control of another (4) by the use of force or intimidation (5) but not armed with a dangerous weapon. La. R.S. 14:65. Through testimony of the witnesses, the State was able to prove that there was a "taking" as the victim of the robbery testified that her purse and its contents were removed from her basket in the Wal-Mart parking lot. The victim testified that her purse included various personal items including cash. Thus, the element of "any thing of value" was established. The victim also testified that her purse was sitting in her shopping basket as she removed bags from it to place in her vehicle. This testimony standing alone is sufficient to establish the *1198 element of taking "from a person or in the immediate control of another."
The remaining element is "the use of force or intimidation." Oxford University Press dictionary defines force as "achieve or bring about by effort" or "make (someone) do something against their will." The dictionary also defines intimidate as "frighten or overawe, especially so as to coerce into doing something." The victim in this case did not give up the purse of her own will, nor was it merely taken secretly. The victim, instead, was openly and quickly approached by a man in the heavy rain who grabbed her purse, which was in her close proximity. We find that the jury was reasonable in finding that such a situation was, at the very least, intimidating. This assignment of error is meritless.

DECREE
For the foregoing reasons, Defendant's conviction for armed robbery is modified and a conviction for simple robbery is entered. The matter is remanded to the trial court for resentencing in accordance with La. R.S. 14:65.
CONVICTION MODIFIED AND REMANDED FOR RESENTENCING.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, PEATROSS and MOORE, JJ.
Rehearing denied.

DISSENT FROM THE DENIAL OF REHEARING
BROWN, C.J., dissenting from the denial of rehearing.
Defendant was a principal to the offense. She drove the car, specifically looked for and identified a victim and immediately after the robbery passed the victim's check at KFC. The police found both defendant and her boyfriend at their residence. The opinion states that they were in possession "of several guns and the victim's property."
On cross-examination, defendant admitted that she saw her boyfriend with a "silver gun." Defendant's nephew, who was riding in the car, testified that the gun was large, i.e., a "hog leg." Defendant as well as her boyfriend gave several different accounts attempting to minimize their guilt.
The circumstances support the jury's verdict beyond a reasonable doubt. The majority simply reweighed the evidence which is constitutionally prohibited and reduced the conviction.
I would grant a rehearing.
NOTES
[1] Castro also pled guilty to simple burglary in connection with the theft of a briefcase from a vehicle. That crime was committed on August 10, 2005.
[2] "Ice" is methamphetamine in crystal form.
[3] La. C. Cr. P. art. 821(E) provides, "If the appellate court finds that the evidence, viewed in a light most favorable to the State, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense."