686 So.2d 149 (1996)
STATE of Louisiana
v.
Luther HANDLEY.
No. 96 KA 0631.
Court of Appeal of Louisiana, First Circuit.
December 20, 1996.
*151 David Price, Office of Public Defender, Baton Rouge, for Defendant-Appellant Luther Handley.
Doug Moreau, District Attorney, Beau Brock, Asst. District Attorney, Baton Rouge, for State of Louisiana.
Before SHORTESS and LeBLANC, JJ., and TANNER, J. Pro Tem.[1]
THOMAS W. TANNER, Judge Pro Tem.
The defendant, Luther Handley, was charged by grand jury indictment with aggravated rape, in violation of La.R.S. 14:42, armed robbery, in violation of La.R.S. 14:64, second degree kidnapping, in violation of La. R.S. 14:44.1, and possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1. He pled not guilty, and after a jury trial, was found guilty as charged on all four counts.
Defendant appealed, and in a judgment rendered October 6, 1995, this court remanded the case to the trial court because of errors patent on the record. Defendant filed a post verdict judgment motion of acquittal on January 31, 1994, together with a motion for new trial. On March 3, 1994, defense counsel filed an "amending and supplemental motion for new trial" and on April 15, 1994, the trial court denied the motion for new trial and imposed sentences; however, it failed to rule on the post verdict judgment of acquittal, which this court noted was error patent on the record. This court's opinion vacated the sentences and remanded. The trial court subsequently denied the motion for new trial for a second time, as well as the motion for post verdict judgment motion of acquittal on March 15, 1996. Defendant waived the twenty-four hour delay between ruling on the motions and sentencing provided for in La. *152 C.Cr.P. art. 873, and was resentenced. The case was relodged with this court and the record was supplemented with the transcript of the March 15, 1996 hearing on the motion for post verdict judgment motion of acquittal.
Defendant assigns the following errors on appeal: (1) the trial court's denial of a motion for mistrial based on the prosecutor's reference to defendant's failure to testify; (2) the trial court's denial of a motion for new trial; (3) the trial court's imposition of an excessive sentence and failure to consider or apply the sentencing guidelines of La.C.Cr.P. art. 894.1; and (4) the insufficiency of the evidence to support the defendant's conviction. Three other assignments of errors were expressly abandoned.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should determine the sufficiency of the evidence before reaching the other issues. If the entirety of the evidence, including erroneously admitted evidence, is insufficient to support the conviction, the defendant must be discharged as to that crime, which would moot the other assignments of error. State v. Hearold, 603 So.2d 731, 734 (La.1992).
If the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, however, the defendant is not entitled to an acquittal. Instead, the reviewing court must then consider the assignments of trial error to determine whether he is entitled to a new trial. If the reviewing court determines there has been prejudicial trial error, the defendant must receive a new trial. He is not, however, entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. Lockhart v. Nelson, 488 U.S. 33, 40-41, 109 S.Ct. 285, 290-291, 102 L.Ed.2d 265 (1988); State v. Hearold, 603 So.2d at 734. As defendant has alleged the evidence at trial was insufficient to support his conviction, we must first review the entirety of the evidence.

WAS THE EVIDENCE SUFFICIENT TO CONVICT DEFENDANT OF AGGRAVATED RAPE, ARMED ROBBERY, SECOND-DEGREE KIDNAPPING, AND AGGRAVATED POSSESSION OF A FIREARM?
On Saturday, May 9, 1993, Angela Collins went shopping on Nicholson Drive at a bargain store for items for herself and her two small children. Collins was a 26-year old cashier at Popeye's Fried Chicken. She was driving her fiance's car that day and "had gotten into a real big argument" with him, so she was "actually just driving and riding around" after she completed her shopping. She drove all over Baton Rouge for several hours.[2] She eventually ran out of gas in north Baton Rouge, at the corner of Monroe and Acadian Throughway. She went to the Circle K nearby, but found it closed. She then walked to the home of her former landlady, Theresa Stewart, on Chestnut Street. Stewart's daughter, Marietta, was a former high school classmate of Collins and Collins had rented a house from Stewart several years earlier.
Collins asked Stewart's son, E.J. Stewart, to help her get gas. Stewart gave her a container to get gasoline, but said that he couldn't take her to get gasoline at that time because his parents were asleep and he didn't have a car. He suggested that she ask one of his friends, Luther, who was there at the house, to take her instead. She replied that she didn't know him and asked that E.J. ask Luther to take her. Defendant, Luther Handley, agreed to take her to get gasoline.
Defendant and Collins went to the Exxon station on Plank Road to get gasoline. He asked her where her car was, and she told him; he said that he had to stop by to see a friend of his and drop something off before he took her to the car.
Collins testified that defendant then began driving down side streets and that she was *153 confused as to their location. Finally they arrived at an apartment complex south of Florida Street; defendant drove into the parking lot and backed his car into a parking spot. Collins saw one car parked beside defendant's car.
Defendant went to his vehicle's trunk, and got back in the car holding a gun. It was distinctive, with a pink pearl handle. He held the gun in Collins' face and told her to get in the back seat by crawling over the seat rather than opening the door. He got in the back seat with her, pointed the gun at her, and told her to get undressed. She told him she wouldn't get totally undressed and he hit her on the side of her face with the back of his hand. He made her take off her pants and underwear, and made her perform oral sex on him. He then made her stand up in the car while he draped a sheet or blanket which was in the car over the visor, obscuring the side of the car.
Collins testified that defendant alternated between forcing her to perform oral sex on him and engaging in intercourse with her, over the course of several hours. He finally ejaculated inside her and grabbed the blanket, wiping himself with it, and started getting dressed. She wiped herself off with her panties and threw them out of the car and onto the ground.
Defendant told Collins he would take her back to her car, but instead he turned into a side street a block over from Florida and demanded her money, still pointing the gun at her. She had exactly eighty-six dollars, which she gave him. He told her to get out; she grabbed the gas can and got out of the car. She was able to get the license plate number of the vehicle as defendant drove away.
Collins walked back to her car, put the gas in it and drove back to the Stewart home to tell her friends what had happened. She then left to go to Baton Rouge General Hospital, never stopping to get more gas. She ran out of gas again on the way to the hospital, on North Boulevard near Romano's grocery store; she left her car there and walked to the hospital.
When she arrived at the hospital, staff there called the police. Officer Williams arrived first. She gave him the license plate number she had obtained, and told him the names of the people who had been at the Stewart home, and the Stewart phone number. Collins was not sure of defendant's name. He was able to get the name of defendant from the Stewarts and he learned that the car was registered to Brenda Fulton.
Detective Luttrell with the Sex Crimes Division took her to Woman's Hospital for her examination. Luttrell and Collins then rode around attempting to find the location where Collins had been allegedly raped, and they eventually found the apartment complex, at Convention Street and North 25th Street in Baton Rouge. Her panties were still lying on the ground. Luttrell took Collins home to her mother's house.
Dr. Sterling Sightler, the doctor who examined Collins at Woman's Hospital, testified that Collins reported her last consensual intercourse was on May 7, fewer than forty-eight hours before the alleged rape. The usual length of time motile sperm remain in the vagina is about six to eight hours; nonmotile sperm may be present for twenty-four hours, or possibly longer. There were fragments of nonmotile sperm within the vagina upon examination. Dr. Sightler could not testify where the sperm fragments came from. There were no tears or lacerations to the vagina; since Collins had borne children, there was a lower likelihood that trauma caused by intercourse would be apparent. Collins reported to Dr. Sightler that she did not think she had any injuries.
Officer Williams testified that he saw the victim at Baton Rouge General, that she appeared upset, her clothes were deranged, her hair was deranged, and she was crying. She told him she was trying to get a ride from her friend to get gas and a black male volunteered to give her a ride; and that she stated he drove around in circles and drove to an isolated area, took a gun out of the trunk, put it to her head and made her have sex with him. She also told him that the man put some kind of sheet or blanket with cartoons on it over the window of the car.
*154 Brenda Fulton testified for the state. Fulton was the owner of the car driven by defendant, and also the owner of the gun used during the commission of the crimes. She testified she had dated the defendant for two months. The night of the crimes, she, defendant and a few friends were partying, and at about ten he left with a friend of his; she presumed he had left in the friend's car.
Fulton saw defendant the next morning around seven o'clock in her apartment; he came by with her keys, which he had taken the night before. She asked that he move her car to the next street and he did so before getting into bed with her. The police called to ask about the car registered to her name; she told the police the car had never left and wasn't involved in any crimes. She then asked defendant if her car was involved in a rape, and he told her he was being set up. Fulton told him the police were coming over, and he got up, got her gun out of the side of the bed, said, "Let me put the clip back in the gun," and replaced the gun in her jewelry box where it had supposedly been.
Fulton identified the gun used in the crimes as her gun; it had a distinctive pink pearl handle. She also identified the cartoon blanket, and testified that it was in her car because it belonged to a friend and was used to drape over a television set in the car. She testified that she approached defendant about having sex with her, and he refused, stating that he was tired.
Detective Luttrell testified that he was called to Baton Rouge General Hospital to investigate the rape of Angela Collins. He drove her from there to Woman's Hospital, and after her examination he went with her to try to locate the scene of the incident. Taking the information she gave him, he drove her around the area and took her to several locations which he knew were within a general specific area that would fit her description.
He eventually came to an apartment complex which she identified as being the scene of the crimes; she recognized a car parked next to the car defendant was driving, and she and Detective Luttrell found her panties under the car. The panties were seized and taken to the crime lab. The apartment complex was located at Convention Street and 25th Street.
Luttrell also testified that Brenda Fulton retrieved her weapon which was used in the crimes and he recovered it from her. He also obtained the blanket used during the commission of the crimes.
Defendant argues that because there were contradictions in the victim's testimony, and she was the only witness to the rape, there was no way a reasonable jury could have found her testimony to be credible. He further argues that Dr. Sightler's testimony did not establish that defendant raped Angela Collins.
We disagree. The contradictions defendant points to are minorfor example, that Collins testified that the defendant did not drop her off at Romano's after the crimes, although she told the police he did; that she first told the police that defendant "offered" her a ride rather than being asked by E.J. Stewart to give her a ride; and that she did not tell Dr. Sightler that she was struck by the defendant, although she told the police she had been beaten with a gun.
Essentially, defendant's argument is that the victim was not a credible witness. However, as the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Furthermore, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Wallace, 612 So.2d 183, 191 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1253 (La.1993), citing State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). Here, the jury unanimously returned a verdict of guilty and apparently chose to believe the victim's story. Any minor discrepancies may easily be explained by the traumatic experience undergone by the victim and possible gaps in memory.
Furthermore, Dr. Sightler's testimony established that the victim was raped. Collins' story that she had been raped is not negated because no signs of trauma were present and *155 nonmotile sperm fragments were found in the victim's vagina fewer than forty-eight hours after she had consensual sex.
The victim's testimony is also corroborated by that of Brenda Fulton, who identified the distinctive gun described by the victim as belonging to her, and who identified the blanket used by defendant to obscure the activities inside the car from the sight of any passerby.
In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). Taking the evidence in this case in the light most favorable to the state, any rational trier of fact could have found that defendant committed aggravated rape, armed robbery, second degree kidnapping, and was in possession illegally of a firearm as a convicted felon (to which prior conviction the defense stipulated). The state proved that a dangerous weapon was used to assist defendant in the rape of Angela Collins; that he robbed her of eighty-six dollars in cash; and that he forcibly seized and carried her from one place to another while armed with a dangerous weapon. See La.R.S. 14:42, 14:64, 14:44.1, and 14:95.1. This assignment of error is without merit.

SHOULD THE MOTION FOR NEW TRIAL BASED UPON A PREJUDICIAL ERROR OR DEFECT IN THE PROCEEDINGS HAVE BEEN GRANTED?
Defendant moved for a new trial based in part upon defense counsel's discovery several days after the trial and verdict that a duty report written by a Stop Rape Crisis Center Escort counselor, containing a statement made by the victim that she had learned from friends that defendant "had done this before," was inadvertently included in exhibits published to the jury during deliberations.
Defense counsel testified at the hearing on the motion for new trial that either one or two days after the trial, he was approached in the courthouse by one of the jurors serving during the trial, who stated, in what defense counsel perceived to be an attempt to justify the verdict, "Well, we read something somewhere or we heard that he had done this type of thing before." He asked, "Where did you read that?" and the juror replied that it was given to the jury with the rape kit introduced into evidence. The rape kit contained medical evidence and the doctor's report concerning her examination of the victim.
Defense counsel testified that he had never seen the document, that it was not included with the state's response to discovery requests he made before trial, and that had he known it was included within the rape kit he would have objected to it. During the trial, he did not view the contents of the rape kit, assuming that it included either physical scientific evidence or written reports the state had previously supplied to him. His investigator had likewise reviewed the state's exhibits before trial. Defense counsel stipulated that before and during the trial, neither party was aware that the document was in the rape kit, and that the rape kit and its contents were published to the jury.
The prosecutor testified that he had talked to the jury after the verdict was rendered, and that none of the jurors indicated to him that they knew the defendant had been accused before.
The courtroom bailiff, Sophia Sadler, testified that a few minutes after the jury entered the deliberation room, a juror knocked on the door and asked to look at some documents. A small "piece of document" was between some photographs she brought. By the time the jurors spread the photographs on the table to start going through them, the foreman knocked on the door and told Sadler, "Oh, we have something by mistake. It has writing on it and we were instructed we could not read it, and we haven't yet, but I noticed it before anybody else looked at it." The bailiff testified that she did not believe *156 they even had time to look at the document. No other witnesses testified at the hearing.
Defendant's motion for new trial falls under La.C.Cr.P. art. 851(4), which provides as follows:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
* * * * * *
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment....
Therefore, the defendant must show first that injustice has been done to him, caused by a prejudicial error or defect not discovered before the verdict or judgment notwithstanding the exercise of reasonable diligence.
We find that defendant has failed to make this showing and that the trial court properly denied the motion for new trial. The trial court reasoned that the situation was "hybrid" because it did not fall within the normal scope of motions for new trial. The standard for review of a motion based on newly discovered evidence was not applicable because the evidence was available before and during the trial and was inadvertently overlooked by both defense and prosecution. Nor was the standard for mistrial applicable, as the remedy of either declaring a mistrial or admonishing the jury under La.C.Cr.P. art. 770 was not available to the court since it was discovered after the trial that the evidence had erroneously been published to the jury. The trial court found that the case law on mistrial based on remark or comment by the judge, district attorney, or a court official was analogous, however, and that if the error was so prejudicial that it would have warranted an admonition or mistrial, a new trial should be granted. She ruled that the error was not so prejudicial that it denied the defendant a fair trial.
However, we pretermit any discussion of what legal standard should be applied in this situation because the defendant failed to carry his burden of proof that the defect was prejudicial. According to the bailiff's testimony, the foreman of the jury noticed the written document early enough to preclude any other jury member from seeing the report. The statement was contained on line 11 of the "detailed account of incident" of the "E.B.R.P. District Attorney's Stop Rape Crisis Center Escort Counselor Duty Report." The report was handwritten and, in the amount of time that, according to the bailiff's testimony, the jury had to review the document, it must have been quite difficult to read in its entirety. It was not shown that injustice was done the defendant, and the criteria for granting a new trial under La. C.Cr.P. art. 851 were not met. This assignment of error is without merit.

DID THE PROSECUTOR IMPERMISSIBLY COMMENT ON THE DEFENDANT'S FAILURE TO TESTIFY?
The defendant alleges as error the trial court's denial of a motion for mistrial based upon comments made by the prosecutor during his rebuttal of defendant's closing argument which allegedly impermissibly referred to the defendant's failure to testify in his own behalf, in violation of La.C.Cr.P. art. 770(3). The statements, taken in context, are as follows:
Officer Williams said he found out the defendant's name and he then called the Stewarts. She said, call the Stewarts, they know who it is. He called the Stewarts. He ran the license plate and it came back to Ms. Fulton. And the police investigated that. Mr. Greenlee never explained the defendant not being at Ms. Fulton's house that night. That was never explained. Ms. Fulton was on the stand and Ms. Fulton was the subject of cross examination. Do you know what time *157 he left? She said she didn't know, that's what she told me.
* * * * * *
Where is her boyfriend figuring this out or her getting in trouble have to do with this? She said it happened that day. Okay. I mean, again, there is no evidence of any of this stuff, or hardly anything that Mr. Greenlee is talking about. There's not evidence. He's trying to pick away at the things that just aren't perfect. And you're going to be told in the instructions that we don't have to prove things to an absolute one hundred percent perfection. Because we can't.... Heck, I mean there's been no reason why she would lie, nothing in evidence, that's for sure. Nothing he asked her about any of that stuff.
Pleas[e] don't be sidetracked, please don't be sidetracked on any of the red herrings that have been thrown out at you. And ask yourselves, why would she come up with all these things? Why would she discuss the route and know that but not come up with a better lie? We've had nothing to impeach her. (Emphasis added.)
Defendant argues that because there were no witnesses to the alleged crimes committed by Luther Handley other than Handley and the victim, defendant must be the only witness who could have impeached the victim and therefore the prosecutor's comments impermissibly referred to his failure to testify.
Where the reference to the failure of defendant to take the stand is direct, a mistrial should be declared, and it is irrelevant whether the prosecutor intended for the jury to draw unfavorable inferences from defendant's silence. However, where the reference is not direct, the court will inquire into the remark's intended effect on the jury in order to distinguish indirect references to the defendant's failure to testify from general statements that the prosecution's case is unrebutted. In cases where the prosecutor simply emphasizes that the state's evidence is unrebutted, and there are witnesses other than defendant who could have testified for the defense but did not do so, the prosecutor's argument does not constitute an indirect reference to defendant's failure to testify. On the other hand, where the defendant is the only witness who could have rebutted the state's evidence, a mistrial is mandated where the prosecutor refers to the testimony as uncontroverted. State v. Johnson, 541 So.2d 818, 822 (La.1989); State v. Thornton, 94-1470 p. 10-11 (La.App. 1st Cir. 10/6/95), 671 So.2d 481, 488.
In the instant case, we find that the prosecutor's comments challenged by defendant did not constitute indirect references to defendant's failure to take the stand. Other witnesses could have been called to testify why defendant was not at Brenda Fulton's house the night of the crimes; for example, Fulton testified that she was with defendant and several other persons "partying" the night of the crimes, and in fact referred to Lee Edwards, with whom she presumed defendant to be that night.
Defendant presented a defense that he was the victim of a conspiracy to set him up, and that the victim was an unreliable witness. The prosecutor's comments in rebuttal appear to have been made in an attempt to discredit defense counsel's efforts to cast doubt upon the victim's testimony and to generate reasonable doubt as to defendant's guilt in the jurors' minds. Arguing that the victim had no reason to lie and that there was no evidence impeaching her does not focus the jury's attention on defendant's failure to testify. The victim's testimony was corroborated by other witnesses, and defendant could have called other witnesses to impeach the victim (for example, her boyfriend). We need not reach defendant's argument that the harmless error rule is applicable to La.C.Cr.P. art. 770(3) because we find that the comments made by the prosecutor were not references to defendant's failure to testify. This assignment of error is without merit.

WAS DEFENDANT'S SENTENCE UNCONSTITUTIONALLY EXCESSIVE?
Defendant argues on appeal that his sentence was excessive and that the trial court failed to consider or apply the sentencing *158 guidelines of La.C.Cr.P. art. 894.1. To preserve the right to object on appeal to his sentence, the defendant must file in the court a motion to reconsider the sentence in which he alleges the specific ground upon which the motion is based. La.C.Cr.P. art. 881.1(D); State v. Roblow, 623 So.2d 51, 59 (La.App. 1st Cir.1993); State v. Southall, 93-2341 p. 5-6 (La.App. 1st Cir. 3/3/95), 652 So.2d 581, 584, writ denied, 95-0705 (La. 9/1/95); 658 So.2d 1260. However, in order to preserve a claim of constitutional excessiveness, the defendant need not allege any more specific ground than that the sentence is excessive. If he does not allege any specific ground for excessiveness or present any argument or evidence not previously considered by the court at original sentencing, then he does not lose the right to appeal the sentence; he is merely relegated to having the appellate court consider the bare claim of excessiveness. State v. Mims, 619 So.2d 1059-1060 (La.1993).
The state argues here that defendant did not file a motion to reconsider sentence, and therefore may not have the sentence reviewed at all. We note that at the resentencing hearing held on March 15, 1996, defense counsel made an oral motion which may be construed as a motion to reconsider the sentence under La.C.Cr.P. art. 881.1(A)(2). However, the motion did not set forth the specific grounds on which it is made. Defense counsel, in an exchange between him, the trial court and the prosecutor concerning the terms of the original sentence handed down on April 15, 1994, stated, "I think for the record I guess I need toand orally object to the court's sentence. I think under 881" Although it may be argued that this statement does not allege excessiveness as a ground for a motion for reconsideration of the sentence, and no written motion was ever filed, we will consider the bare claim of excessiveness on appeal.[3]
The trial judge, as we noted earlier in the opinion, imposed the mandatory sentence for the aggravated rape conviction of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. For the armed robbery conviction, the defendant received a sentence of twenty-five years at hard labor,[4] without benefit of parole, probation, or suspension of sentence, to run concurrently to the sentence for aggravated rape. For the second degree kidnapping conviction, the defendant received a sentence of five years at hard labor, without benefit of parole, probation, or suspension of sentence, to run concurrently to the aggravated rape sentence but consecutively to the armed robbery sentence. For the possession of a firearm by a convicted felon conviction, the defendant received a sentence of ten years at hard labor, without benefit of parole, probation, or suspension of sentence, to run concurrently with the aggravated rape sentence but consecutively to the other two counts. Defendant was given credit for time served.
We do not find the sentences imposed by the trial court to be excessive. The sentence for armed robbery of twenty-five years is well within the range set by the statute; the sentence for second degree kidnapping *159 of five years is the minimum the statute carries. Defendant received the maximum term of incarceration for possession of a firearm by a convicted felon. However, we note the sentence was illegally lenient in that the court did not impose a fine of at least $1,000.00 as mandated by La.R.S. 14:95.1(B). Since the state did not appeal, we cannot correct the sentence. See State v. Fraser, 484 So.2d 122, 125 (La.1986). Defendant argues in brief that the trial court did not consider the sentencing guidelines nor offer any justification for imposing consecutive sentences; however, we are precluded from reviewing these arguments by the defendant's failure to file a motion to reconsider sentence setting forth specifically his grounds, under La.C.Cr.P. art. 881.1. This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
SHORTESS, J., dissents in part.
SHORTESS, Judge, Dissenting, in Part.
The majority would hold, absent State v. Mims, that Louisiana Code of Criminal Procedure article 881.1 would procedurally bar defendant from raising the excessive sentence issue on appeal because his motion did not conform with 881.1's specificity requirement.
In my opinion, Code of Criminal Procedure article 881.1(D) conflicts directly with article I, section 19, of the Louisiana Constitution, which guarantees that no one shall be subjected to imprisonment without the right to judicial review based upon a complete record. Sentencing, of course, is a post-verdict occurrencea defendant's constitutional right at this stage should be protected carefully. I believe article I, section 19, should govern this conflict between laws. A defendant should not be barred in any way from exercising his right to a judicial review based on the complete record.
I respectfully dissent in part.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] It is unclear from Collins' testimony how long she was driving around Baton Rouge, but she testified that her shopping trip was after lunch and the offenses occurred allegedly after twelve o'clock p.m. Saturday.
[3] We note the Third Circuit Court of Appeal has held that mere objection to the sentence at the sentencing hearing precludes defendant from raising the claim of excessiveness and failure to comply with the sentencing guidelines on appeal. State v. Gachot, 609 So.2d 269 (La.App. 3rd Cir.1992), writ denied, 617 So.2d 1180 (La.1993), cert. denied, 510 U.S. 980, 114 S.Ct. 478, 126 L.Ed.2d 429 (1993); State v. Hillman, 613 So.2d 1053 (La.App. 3rd Cir.), writ denied, 617 So.2d 1181 (La.1993); State v. Pierre, 614 So.2d 1309 (La.App. 3rd Cir.), writ granted, 626 So.2d 1180 (La.1993), reversed on other grounds, 93-0893 (La. 2/3/94), 631 So.2d 427 (La.1994).
[4] La.R.S. 14:64(B) provides that whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence. La.R.S. 14:44.1(C) provides that second degree kidnapping is subject to a sentence of imprisonment at hard labor for not less than five nor more than forty years; at least two years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence. At the time these crimes were committed, La.R.S. 14:95.1(B) provided that a convicted felon found guilty of possession of a firearm shall be imprisoned at hard labor for not less than three nor more than ten years without benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars. The penalty provision of R.S. 14:95.1 was increased by Acts 1995, No. 987, § 1.