STATE OF LOUISIANA     *     NO. 2024-KA-0458

VERSUS     *

                  **COURT OF APPEAL**

JAMAL D. HORTON, ET AL     *

                  **FOURTH CIRCUIT**

    *

                  **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 538-035, SECTION "C"

\* \* \* \* \* \*
**Judge Tiffany Gautier Chase**
\* \* \* \* \* \*

(Court composed of Judge Sandra Cabrina Jenkins, Judge Tiffany Gautier Chase,
Judge Dale N. Atkins)

**JENKINS, J., CONCURS IN PART AND DISSENTS IN PART**

Sherry Watters
LOUISIANA APPELLATE PROJECT
P. O. Box 58769
New Orleans, LA 70158

      COUNSEL FOR DEFENDANT/APPELLANT JONATHAN STONE

Justin Caine Harrell
H2 LAW, LLC
1100 Poydras Street
Suite 2900
New Orleans, LA 70163

      COUNSEL FOR DEFENDANT/APPELLANT MICHAEL MEYERS

Christopher A. Aberle
LOUISIANA APPELLATE PROJECT
P.O. Box 8583
Mandeville, LA 70470-8583

COUNSEL FOR DEFENDANT/APPELLANT JAMAL D. HORTON

Jason R. Williams
District Attorney
Parish of Orleans
Brad Scott
Chief of Appeal
Parish of Orleans
Zachary M. Phillips
Assistant District Attorney
Parish of Orleans
619 South White Street
New Orleans, LA 70119


COUNSEL FOR THE STATE OF LOUISIANA/APPELLEE



**CONVICTIONS AFFIRMED;
SENTENCES VACATED
AND REMANDED FOR
RESENTENCING**


**JULY 24, 2025**

Jamal Horton, Michael Meyers and Jonathan Stone appeal their convictions and life sentences for second degree murder. After consideration of the record before this Court, and the applicable law, we affirm each defendant's conviction for second degree murder. As the district court erred in failing to observe the twenty-four hour sentencing delay set forth in La. C.Cr.P. art. 873, we vacate the defendants' sentences and remand for resentencing.

<u>**Facts and Procedural History**</u>

On June 14, 2017, Brayanta Ketchens (hereinafter "Ms. Ketchens") called 911 reporting an attempted break-in at her residence on Olive Street. She also texted her mother and a friend asking that they contact the police because people were attempting to break into her apartment. At trial, testimony was presented that the day prior to her death, June 13, 2017, Ms. Ketchens was involved in an altercation with Dalton Stone, the brother of defendant Jonathan Stone. After the altercation, Ms. Ketchens called a friend, who came to her home and allegedly shot and injured Dalton Stone. Video surveillance footage from University Medical Center shows Dalton Stone entering the hospital in a wheelchair on June 13, 2017. The next day, June 14, 2017, Dalton Stone is seen at University Medical Center

conversing with three male individuals: one individual is wearing a gray shirt, with wolves on the front of the shirt, and light blue shorts; the second individual is wearing burgundy pants; and the third individual is wearing red shoes. The three individuals later depart University Medical Center in a white Kia.

On June 14, 2017, less than ten minutes after leaving University Medical Center, a crime camera located on Olive Street captured a white Kia arriving and parking in front of Ms. Ketchens' apartment. The footage from the crime camera can be described as follows:

> Three individuals exited the vehicle and walk towards Ms. Ketchens' apartment. One individual is wearing a gray shirt, with wolves on the front of the shirt, and light blue shorts; the second individual is wearing burgundy pants; and the third individual is wearing red shoes. The video also depicts two male individuals, later identified as Raymond Nelson (hereinafter "Mr. Nelson) and Kenneth Murdock (hereinafter "Mr. Murdock"), and two unidentified female individuals.[1] Mr. Nelson and Mr. Murdock are conversing and approach the three individuals in front of Ms. Ketchens' apartment. Mr. Murdock walks and stands on the corner of Olive Street. A short time later, an individual wearing a gray shirt, with wolves on the front of the shirt, and light blue shorts and an individual wearing burgundy pants are seen running away from the apartment. The individual wearing a gray shirt, with wolves on the front of the shirt, and light blue shorts enters the white Kia on the rear driver side of the vehicle. The individual wearing burgundy pants enters the white Kia on the front passenger side. The white Kia then reverses down Olive Street and flees the scene.

Sergeant Thaddeus Williams (hereinafter "Sergeant Williams"), with the New Orleans Police Department, served as the lead investigator in this case and responded to the scene of the homicide. Ms. Ketchens was located in the bathtub, having been fatally shot nine times. During the course of the investigation, Mr. Murdock was identified as a person of interest after Sergeant Williams sent a still

---

[1] Mr. Nelson was also indicted for the second degree murder of Ms. Ketchens. Mr. Nelson pled guilty to an amended charge of obstruction of justice, a violation of La. R.S. 14:130.1.

2

photograph of the Olive Street video surveillance footage to other departments of the New Orleans Police Department. Mr. Murdock was identified as one of the male individuals in the photograph. On June 28, 2017, during an interview with Sergeant Williams, Mr. Murdock was shown a still photograph from the University Medical Center video surveillance footage depicting three individuals entering the hospital. From this photograph, Mr. Murdock identified the three individuals as "Jamal," "Michael" and "John." On October 6, 2017, the State conducted a perpetuation of testimony hearing at which it took the sworn statement of Mr. Murdock regarding the investigation. At the hearing, Mr. Murdock was represented by Kevin Boshea (hereinafter "Mr. Boshea").[2] Mr. Murdock testified that he, along with Mr. Nelson, were present on Olive Street the day Ms. Ketchens was murdered. He witnessed a white Kia, driven by "Jamal" arrive and three individuals exited the vehicle. Also, occupying the vehicle were "Michael" and "John." Mr. Murdock saw the three individuals approach Ms. Ketchens' apartment and they asked him whether Ms. Ketchens was in the apartment. After he answered in the negative, Mr. Murdock witnessed "Michael go around" the side of Ms. Ketchens' residence. Mr. Murdock proceeded to walk to the corner of the street and approximately ten to thirty seconds after witnessing "Michael" walk to the side of Ms. Ketchens' residence, Mr. Murdock heard gunshots.

On October 19, 2017, an Orleans Parish grand jury indicted Jamal Horton, Michael Meyers and Jonathan Stone for the second degree murder of Ms. Ketchens, a violation of La. R.S. 14:30.1.[3] Mr. Meyers retained Mr. Boshea to

---

[2] Mr. Boshea did not ask questions or speak at the perpetuation of testimony hearing.

[3] When referring to the defendants individually, we will utilize their last name. Collectively, we will refer to them as "defendants." In certain portions of the opinion it is necessary to utilize each individual defendant's name although referencing all three defendants collectively.

serve as his defense counsel in this matter. Prior to trial, the State filed a motion to recuse Mr. Boshea asserting a conflict of interest existed stemming from his representation of Mr. Meyers because Mr. Boshea had represented Mr. Murdock at the perpetuation of testimony hearing. On July 17, 2023, the district court heard the motion to recuse wherein, Mr. Meyers waived any conflict of interest and explicitly stated that he wished for Mr. Boshea to remain as his defense counsel. Accordingly, the district court denied the State's motion to recuse. The State did not seek supervisory review of the ruling.

After a five-day jury trial, the jury unanimously found the defendants guilty of second degree murder. Following trial, but prior to sentencing, the defendants each moved for a new trial, Mr. Horton moved for a post-verdict judgment of acquittal and Mr. Meyers filed a motion for judgment notwithstanding the verdict. On April 8, 2024, the district court denied all motions filed by the defendants and immediately imposed sentences of life imprisonment, without the benefit of probation, parole or suspension of sentence as to each defendant. On April 17, 2024, Mr. Stone filed a motion for post-verdict judgment of acquittal and motion to reconsider sentence. The record does not reflect a district court ruling on Mr. Stone's motions.[4] This appeal followed.

### Relevant Trial Testimony

The following testimony was adduced at defendants' trial:[5]

---

[4] At the time of the district court's ruling denying all of the defendants' motions, Mr. Stone had not filed his post-verdict judgment of acquittal and motion to reconsider sentence. However, Mr. Stone does not raise the district court's failure to rule on his post-sentencing motions on appeal.

### *Sergeant Thaddeus Williams*

Sergeant Williams testified that he responded to the scene of the homicide at Ms. Ketchens' apartment. He surmised that the perpetrator removed an air conditioning window unit in Ms. Ketchens' bedroom and entered the apartment through the window. In conjunction with his investigation, he interviewed Ms. Ketchens' mother who advised him that Ms. Ketchens was involved in an altercation with Dalton Stone a day earlier, which resulted in a shooting that injured Dalton Stone. Sergeant Williams interviewed Dalton Stone at University Medical Center and confiscated a cellular phone which was in Dalton Stone's possession. In reviewing the hospital video surveillance footage, Sergeant Williams observed three individuals arrive to visit Dalton Stone. The hospital video surveillance footage depicts an individual wearing a gray shirt, with wolves on the front of the shirt, and light blue shorts; an individual wearing burgundy pants; and an individual wearing red shoes. After some time, these individuals departed the hospital in a white Kia. Sergeant Williams also viewed video surveillance footage from a camera located on Olive Street. The video depicts a white Kia parking in front of Ms. Ketchens' apartment. After parking, three individuals exit the vehicle. These individuals are wearing the same attire as the individuals in the hospital's surveillance footage. The video further illustrates Mr. Nelson and Mr. Murdock engaging in a discussion with these individuals prior to the homicide. When Sergeant Williams interviewed Mr. Murdock, as part of the investigation into the homicide, Mr. Murdock identified defendants as the individuals exiting the white Kia and approaching Ms. Ketchens' apartment

---

[5] Ms. Ketchens' mother, LaShondra Burse, also testified at trial.

immediately prior to hearing gunshots. Mr. Murdock also identified Mr. Nelson as being at the scene.

### Captain Wayne DeLarge

Captain Wayne DeLarge (hereinafter "Captain DeLarge") supervised the investigation. He testified that the day following the homicide, Mr. Stone presented to the New Orleans Police Department's headquarters in an attempt to retrieve the cellular phone confiscated from his brother Dalton Stone, at University Medical Center.[6] Mr. Stone advised Captain DeLarge that he was actually the owner of the cellular phone confiscated. When meeting with Captain DeLarge, Mr. Stone was wearing a gray shirt, with wolves on the front, and light blue shorts. Captain DeLarge testified that Mr. Stone's attire matched that of one of the individuals observed on the video surveillance footage on the day of the homicide.

### Kenneth Murdock

Mr. Murdock testified he underwent two "head surgeries," one in 2018 and the other in 2019, and could not recall the events surrounding the homicide or his previously perpetuated testimony. The district court allowed Mr. Murdock to testify over the defendants' objections. He watched the video interview previously conducted with Sergeant Williams in an attempt to refresh his recollection but, admitted that he was testifying based on what he watched on the video and not his individual recollection. Mr. Boshea, nor counsel for Mr. Stone, cross-examined Mr. Murdock.

### Nicole Proctor

---

[6] Captain DeLarge testified that Dalton Stone's cellular phone was confiscated as part of the investigation into his shooting.

Nicole Proctor (hereinafter "Ms. Proctor"), a forensic DNA analyst (previously employed with Louisiana State Police), tested DNA samples from each of the defendants against various samples obtained from the crime scene. She testified that Mr. Stone "could be excluded" as a DNA contributor on the exterior bathroom doorknob and the top of the air conditioning window unit. Conversely, Ms. Proctor stated that Mr. Meyers "could not be excluded" as a DNA contributor on the exterior bathroom door and the air conditioning window unit. She further noted that she did not conduct any DNA testing regarding Mr. Horton.

### *Dr. Dwight McKenna*

Dr. Dwight McKenna (hereinafter "Dr. McKenna"), is the Orleans Parish Coroner. While he did not perform the autopsy of Ms. Ketchens, he testified that his office conducted the autopsy and that he was familiar with the autopsy report. He stated that Ms. Ketchens suffered nine gunshot wounds throughout different parts of her body. The Orleans Parish Coroner's Office classified Ms. Ketchens' death as "multiple gunshot wounds and a homicide."

Following the State's presentation of the witnesses' testimony, the State rested and defendants did not call any witnesses.

### Discussion

Each defendant raises the following assignments of error:

**Jamal Horton:[7]**

1. There is insufficient evidence to support Mr. Horton's conviction for second degree murder;

---

[7] On August 23, 2024, this Court granted Mr. Horton's motion for leave to file a supplemental brief. He filed his *pro se* brief on June 30, 2025, in which he asserts the State had insufficient evidence to convict him of second degree murder. This issue will be addressed in conjunction with Mr. Horton's assignment of error number one as listed in his counseled brief.

7

2. The district court erred in sentencing Mr. Horton immediately after denying his motions for new trial and for post-verdict judgment of acquittal without observing the twenty-four hour delay provided in La. C.Cr.P. art. 873; and

3. The assignments of error and arguments made by co-appellants are adopted and asserted by Mr. Horton.

**Michael Meyers:**

1. Whether the district court committed clear error and/or abused its discretion in denying the State's motion to recuse Mr. Meyers' conflicted counsel;

2. Whether trial counsel was ineffective due to an unwaivable and irreconcilable conflict of interest;

3. Whether Mr. Meyers' right to confront his accusers was violated by the presentation of a witness who, due to brain surgery, evinced no memory of the events for which he was called to testify; and

4. Whether the evidence was constitutionally sufficient to convict.

**Jonathan Stone:**

1. The district court denied Mr. Stone's motion for new trial on the same day as sentencing without a waiver of the twenty-four hour delay set in La. C.Cr.P. art. 873;

2. The State failed to prove Mr. Stone guilty beyond a reasonable doubt;

3. The court's ruling allowed hearsay narration and opinion of videos that were admitted into evidence without foundation, denying the defendant due process and the right to confrontation;

4. The district court erred in imposing a constitutionally excessive sentence; and

5. The assignments of error and arguments made by the co-appellants are adopted and asserted by Mr. Stone.

The assignments of error relative to La. C.Cr.P. art. 873 are addressed in the errors patent section of this opinion. For ease of discussion, we will address each remaining assignment of error under its relevant topic.

***Sufficiency of the Evidence (Mr. Horton's Assignment of Error One; Mr. Meyers' Assignment of Error Four; Mr. Stone's Assignment of Error Two)***

8

## Sufficiency of the Evidence

The State charged each defendant with second degree murder pursuant to La. R.S. 14:30.1 and the jury unanimously found each defendant guilty as charged. Second degree murder is defined, in pertinent part, as "the killing of a human being…[w]hen the offender has a specific intent to kill or to inflict great bodily harm… ." La. R.S. 14:30.1(A)(1). "Specific criminal intent is a state of mind, and, as such, need not be proven as fact but may be inferred from the circumstances and the actions of the accused." *State v. Scott*, 2009-0138, p. 8 (La.App. 4 Cir. 11/18/09), 26 So.3d 283, 289 (citation omitted). Under La. R.S. 14:24, a principal to a crime is defined as "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." Thus, "[u]nder Louisiana law, a person may be convicted of intentional murder even if he has not personally struck the fatal blows." *State v. Wright*, 2001-0322, p. 8 (La. 12/4/02), 834 So.2d 974, 982 (citations omitted). Only those individuals who knowingly participate in the planning or execution of a crime are principals to that crime. *State v. Pierre*, 1993-0893 (La. 2/3/94), 631 So.2d 427, 428. It is not enough to be merely present at the scene in order to be convicted as a principal. *Id.* (citation omitted). "[A]n individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state." *State v. Holmes*, 388 So.2d 722, 726 (La. 1980).[8]

---

[8] The district court judge instructed the jury on the law of principals.

It is well settled that when sufficiency of the evidence, and one or more trial errors, are raised on appeal this Court should first determine the sufficiency of the evidence. *State v. Groves*, 2020-0450, p. 21 (La.App. 4 Cir. 6/10/21), 323 So.3d 957, 971 (quoting *State v. Hearold*, 603 So.2d 731, 734 (La. 1992). We review sufficiency of the evidence first because "if there is not sufficient evidence to support a conviction, an accused is not entitled to a new trial; rather, an accused is entitled to an acquittal. If an accused is entitled to an acquittal, this prevents the need for a retrial." *Id*. (citation omitted).

This Court has previously set forth the applicable standard of review for sufficiency of the evidence:

> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Green*, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. *State v. Mussall*, 523 So.2d 1305 (La. 1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. *Mussall*; *Green*; *supra*. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *State v. Smith*, 600 So.2d 1319 (La. 1992) at 1324.

*State v. Huckabay*, 2000-1082, p. 32 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111 (citation omitted).

Pursuant to *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), this Court must determine that the evidence, viewed in the light most favorable to the prosecution, "was sufficient to convince a rational trier of fact that

10

all the elements of the crime had been proved beyond a reasonable doubt." *State v. Neal*, 2000-0674, p. 9 (La. 6/29/01), 796 So.2d 649, 657 (quoting *State v. Captville*, 448 So.2d 676, 678 (La. 1984)). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. The statutory test of La. R.S. 15:438 "works with the *Jackson* constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury." *Id.* (citation omitted). "When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience." *State v. Brown*, 2012-0626, p. 7 (La.App. 4 Cir. 4/10/13), 115 So.3d 564, 571 (citation omitted). "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *Huckabay*, 2000-1082, p. 32, 809 So.2d at 1111 (quoting *State v. Smith*, 600 So.2d 1319, 1324 (La. 1992)). As an appellate court, we must review the record as a whole just as the trier of fact would do. *State v. Wilson*, 2022-0346, p. 4 (La.App. 4 Cir. 12/9/22), 353 So.3d 389, 393 (citation omitted).

Defendants assert there is insufficient evidence to support a conviction of second degree murder. Specifically, Mr. Horton argues the State failed to negate the possibility of misidentification and did not prove that he had the specific intent to kill Ms. Ketchens. Mr. Meyers maintains the State lacked a credible eyewitness and therefore, any evidence against him is circumstantial. Lastly, Mr. Stone contends the State failed to negate the possibility of misidentification and did not prove that he was a principal to Ms. Ketchens' murder. We will now address each defendant's sufficiency of the evidence arguments separately.

11

***Mr. Horton***

Mr. Horton asserts there is insufficient evidence that he committed or was a principal to Ms. Ketchens' murder. To support his contention, Mr. Horton advances two arguments. First, he maintains that the State cannot place him at the scene of the crime because he is not seen on the Olive Street video surveillance footage. Mr. Horton further argues the district court erred in allowing the State to rely on Mr. Murdock's testimony. Mr. Murdock is the sole witness placing Mr. Horton at the scene of the homicide and, due to "head surgeries," Mr. Murdock testified at trial that he did not independently recall any events surrounding the homicide or his previous testimony. Second, Mr. Horton contends the State failed to establish that he had the specific intent to kill Ms. Ketchens.

When a defendant's identity is at issue, the State bears the burden of negating any reasonable probability of misidentification. *State v. Hughes*, 2005-0992, pp. 5-6 (La. 11/29/06), 943 So.2d 1047, 1051 (citations omitted). Sergeant Williams presented Mr. Murdock with a still photograph from the University Medical Center video surveillance footage. Mr. Murdock identified Mr. Horton in the photo as the individual wearing red shoes, walking with Mr. Meyers and Mr. Stone. The Olive Street video surveillance footage also depicts the same person wearing red shoes exiting a white Kia and approaching the entrance to Ms. Ketchens' apartment. Further, Mr. Murdock testified that as he was standing outside on Olive Street, Mr. Horton, Mr. Meyers and Mr. Stone approached Ms. Ketchens' apartment and inquired as to whether she was home. The State offered evidence of Mr. Horton's physical appearance, which was consistent with the video surveillance footage. Additionally, the State offered evidence placing Mr. Horton at the scene of the homicide prior to and at the time the murder was

committed. Thus, we find the State presented sufficient evidence to negate any reasonable probability of misidentification as to Mr. Horton.

Mr. Horton further contends the State failed to offer sufficient evidence that he had the specific intent to kill or inflict great bodily harm to Ms. Ketchens. "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). "Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant." *State v. Sandifer*, 2016-0842, p. 13 (La.App. 4 Cir. 6/27/18), 249 So.3d 142, 154 (citations omitted). The evidence presented at trial established that Mr. Horton, Mr. Meyers and Mr. Stone went to University Medical Center to visit Dalton Stone after he was shot. The video surveillance footage from the hospital depicts all four men conversing for a significant period at an entrance to University Medical Center. The investigation revealed that Dalton Stone was shot as a result of an altercation between he and Ms. Ketchens the day prior. Upon leaving the hospital after conferring with Dalton Stone, the evidence establishes that Mr. Horton, Mr. Meyers and Mr. Stone traveled to Ms. Ketchens' residence. Upon arrival, they sought confirmation of whether Ms. Ketchens was home from Mr. Murdock. The Olive Street video surveillance footage captures Mr. Horton's red shoes at the entrance to Ms. Ketchens' apartment. Moments later, the same red shoes flee the scene. Mr. Murdock also placed Mr. Horton on the scene alongside Mr. Meyers and Mr. Stone. It is irrelevant that Mr. Horton did not specifically shoot Ms. Ketchens. *See Wright*, 2001-0322, p. 8, 834 So.2d at 982. The evidence demonstrates that Mr. Horton knowingly participated in the planning and execution of the murder of Ms. Ketchens and is therefore a principal to that crime. *See*

13

*Pierre*, 1993-0893 (La. 2/3/94), 631 So.2d at 428. We find, viewing the evidence in the light most favorable to the prosecution, the jury had sufficient evidence to conclude that Mr. Horton was a principal to the murder of Ms. Ketchens. Accordingly, Mr. Horton's first assignment of error lacks merit.

***Mr. Meyers***

Mr. Meyers asserts there is insufficient evidence that he committed Ms. Ketchens' murder. He argues that the location of his DNA inside Ms. Ketchens' apartment is incidental and only establishes that he was acquainted with her. As such, he contends that the evidence against him is circumstantial. Further, Mr. Meyers maintains that the evidence is insufficient to establish his identity as the individual wearing burgundy pants on the University Medical Center and Olive Street video surveillance footage.

Mr. Meyers notes that no DNA evidence was tested from the bullet casings recovered at the crime scene. Nor were fingerprints lifted from the crime scene that matched him. However, the State presented evidence that placed Mr. Meyers' DNA inside Ms. Ketchens' apartment. Ms. Proctor, the forensic DNA analyst, testified that Mr. Meyers' DNA was located on the exterior bathroom door and the air conditioning window unit. The State presented evidence that the perpetrator entered Ms. Ketchens' apartment by removing the air conditioning window unit from the window in her bedroom.

There is further evidence which links Mr. Meyers with Mr. Horton and Mr. Stone. The State presented evidence that Mr. Murdock engaged in conversation with an individual wearing burgundy pants in front of Ms. Ketchens' apartment. Mr. Murdock identified Mr. Meyers as the individual in the University Medical Center video surveillance footage wearing burgundy pants. The same individual in

burgundy pants is observed at University Medical Center visiting Dalton Stone, with Mr. Horton and Mr. Stone. That same individual is seen running from Ms. Ketchens' apartment moments after the shooting and entering a white Kia on the Olive Street video surveillance footage. This, coupled with the location of Mr. Meyers' DNA inside Ms. Ketchens' apartment, supports the jury's conclusion that the State presented sufficient evidence as to Mr. Meyers. Viewing the evidence in the light most favorable to the prosecution, the record supports the jury's conclusion that Mr. Meyers committed the second degree murder of Ms. Ketchens. Accordingly, Mr. Meyers' fourth assignment of error lacks merit.

### *Mr. Stone*

Mr. Stone asserts there is insufficient evidence that he committed or was a principal to Ms. Ketchens' murder. To support his contention, Mr. Stone references the lack of reliable identification evidence and forensic evidence which identified him as the perpetrator. As previously noted, the State must establish any reasonable probability of misidentification when a defendant's identity is at issue. *Hughes*, 2005-0992, pp. 5-6, 943 So.2d at 1051. The State presented evidence that Mr. Stone was observed wearing a gray shirt, with wolves on the front, and blue shorts on the day of the murder. An individual is seen in the University Medical Center and Olive Street video surveillance footage wearing the same attire. The Olive Street video surveillance footage depicts an individual in the same attire exiting a white Kia and approaching the entrance to Ms. Ketchens' apartment. Further, Detective DeLarge testified that Mr. Stone appeared at New Orleans Police Department's headquarters, in an attempt to retrieve his cellular phone, wearing the same attire. A search warrant was obtained for Mr. Stone's residence where a gray shirt, with wolves on the front, and blue shorts were located. Mr.

Murdock identified Mr. Stone as the individual in the still photograph from the University Medical Center video surveillance footage wearing a gray shirt, with wolves on the front, and blue shorts. He also testified that as he was standing outside on Olive Street, Mr. Horton, Mr. Meyers and Mr. Stone approached Ms. Ketchens' apartment and inquired as to whether she was home. The State offered evidence of Mr. Stone's physical appearance, which was consistent with video surveillance footage. Additionally, the State offered evidence placing Mr. Stone at the scene of the homicide prior to and at the time the murder was committed. We find the evidence sufficient to negate any reasonable probability of misidentification as to Mr. Stone.

Mr. Stone also contends the State failed to prove that he aided and abetted in Ms. Ketchens' murder, such that he would be a principal to her murder. The evidence presented at trial established that Mr. Horton, Mr. Meyers and Mr. Stone presented to University Medical Center to visit Dalton Stone after he was shot. The hospital video surveillance footage depicts all four men conversing for a significant period of time at an entrance to the hospital. The investigation revealed that Dalton Stone was shot as a result of an altercation between he and Ms. Ketchens the day before her murder. Upon leaving the hospital after conferring with Dalton Stone, the evidence establishes that Mr. Horton, Mr. Meyers and Mr. Stone traveled to Ms. Ketchens' residence. Mr. Murdock places Mr. Stone at the scene alongside Mr. Meyers and Mr. Horton. Whether Mr. Stone specifically shot Ms. Ketchens is irrelevant. *See Wright*, 2001-0322, p. 8, 834 So.2d at 982. The evidence demonstrates that he knowingly participated in the commission of Ms. Ketchens' murder. We find, viewing the evidence in the light most favorable to the prosecution, the jury had sufficient evidence to conclude that Mr. Stone was a

16

principal to the murder of Ms. Ketchens. Accordingly, Mr. Stone's second assignment of error lacks merit.

"Appellate review for constitutional sufficiency of evidence is limited by the due process standard of *Jackson v. Virginia*. Under that standard, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Toby*, 2023-00722, p. 3 (La. 10/25/24), 395 So.3d 831, 833, *reh'g denied*, 2023-00722 (La. 12/12/24), 397 So.3d 424 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (internal citation omitted). Viewing the evidence presented by the State, in a light most favorable to the prosecution, we find the trier of fact was presented with sufficient evidence to determine that defendants committed the crime of second degree murder.

### *Ineffective Assistance of Counsel (Mr. Meyers' Assignments of Error One and Two)*[9]

Mr. Meyers argues that he received ineffective assistance of counsel because Mr. Boshea previously represented Mr. Murdock during the initial investigation of this matter. While the record reveals that Mr. Meyers waived any conflict of interest and explicitly stated that he wanted Mr. Boshea to remain his trial counsel, on appeal Mr. Meyers asserts his waiver was invalid. Specifically, Mr. Meyers

---

[9] Mr. Meyers' first assignment of error asserts the district court erred in denying the State's motion to recuse. Appellate courts have held that a party may not expressly agree to an adverse ruling and subsequently complain that the ruling was in error. *See State v. Burnette*, 2023-697, p. 26 (La.App. 3 Cir. 10/2/24), 395 So.3d 964, 981, *writ denied*, 2024-01353 (La. 2/19/25), 400 So.3d 927 (citation omitted). The issue of a potential conflict regarding Mr. Boshea's representation was raised pre-trial by the State in a motion to recuse. A district court's ruling on a potential conflict of interest, raised pre-trial, is afforded broad discretion. *State v Cisco*, 2001-2732, p. 22 (La. 12/3/03), 861 So.2d 118, 133. Further, the record reflects that Mr. Meyers actively opposed the State's motion to recuse Mr. Boshea thus, he has waived appellate review of the district court's denial of the State's motion to recuse. Accordingly, this section will only address Mr. Meyers' ineffective assistance of counsel claim.

maintains that due to the conflict of interest, he was denied effective representation because Mr. Boshea failed to confront and cross-examine a crucial witness.

In general, an ineffective assistance of counsel claim is properly raised in an application for post-conviction relief, in the district court, where a full evidentiary hearing on the matter may be conducted. *See State v. Brown*, 2016-0965, p. 17 (La.App. 4 Cir. 5/3/17), 219 So.3d 518, 531. Nonetheless, our Supreme Court has determined that if the record on appeal indicates there is evidence to decide the issue of ineffective assistance of counsel and the issue is raised on appeal by an assignment of error, the issue should be considered in the interest of judicial economy. *See State v. Seiss*, 428 So.2d 444, 449 (La. 1983). To support a claim for ineffective assistance of counsel, a defendant must meet the two-prong test set forth in *Strickland v. Washington*, which provides that a defendant must show (1) that counsel's representation was deficient and (2) the deficiency prejudiced the defendant. 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A defendant must "show that counsel made errors so serious that he was not operating as the type of counsel guaranteed by the Sixth Amendment to the United States Constitution." *State v. Boyd*, 2014-0408, p. 7 (La.App. 4 Cir. 7/25/18), 318 So.3d 397, 402 (citation omitted). It must also be proven that the counsel's error was so severe it deprived the defendant of a fair trial. *Id*. (citation omitted).

In order to knowingly and intelligently waive a conflict of interest claim against their counsel, a defendant "must be told (1) that a conflict of interest exists; (2) the consequences to his defense from continuing with conflict-laden counsel; and (3) that he has a right to obtain other counsel." *State v. Cisco*, 2001-2732, p. 22 (La. 12/3/03), 861 So.2d 118, 133 (citations omitted). At the hearing on the motion to recuse, Mr. Meyers answered in the affirmative when questioned about whether

he had been informed about Mr. Boshea's prior representation of Mr. Murdock; that it was his decision to have Mr. Boshea remain as his trial counsel; and that he had the right to terminate Mr. Boshea's representation. Mr. Meyers stated that he wanted Mr. Boshea to remain as his trial counsel. The record reveals that Mr. Meyers knowingly and intelligently waived any conflict of interest regarding Mr. Boshea's representation.

Additionally, "a defendant must prove both an actual conflict of interest and prejudice in order to establish a claim of ineffective assistance of counsel." *State v. George*, 2012-0204, p. 5 (La.App. 4 Cir. 1/9/13), 108 So.3d 269, 273-74 (citation omitted) (emphasis omitted). Proof that an actual conflict exists is present if defense counsel owes a duty to a party whose interest is in contravention to those of the defendant. *Id.*, 2012-0204, pp. 5-6, 108 So.3d at 274 (citation omitted). "Actual conflicts of interest that affected counsel's performance must be established by specific instances in the record, and the mere possibility of divided loyalties is insufficient proof of actual conflict." *Id.*, 2012-0204, p. 6, 108 So.3d at 274 (citations omitted). "When a lawyer's conflict, actual or potential, may result in inadequate representation of a defendant or jeopardize the federal court's institutional interest in the rendition of a just verdict, a trial judge has discretion to disqualify an attorney or decline a proffer of waiver." *Cisco*, 2001-2732, p. 22, 861 So.2d at 132-33 (citation omitted).

Mr. Meyers asserts that Mr. Boshea's failure to object during Mr. Murdock's testimony and failure to cross-examine him are specific instances of a conflict of interest. The record reveals that at the time of trial, Mr. Boshea no longer represented Mr. Murdock. While Mr. Boshea could have cross-examined Mr. Murdock or objected during his testimony, given the circumstances surrounding

19

Mr. Murdock's testimony, Mr. Meyers has not established that he was prejudiced by Mr. Boshea's actions. Mr. Murdock could not independently recall any events surrounding the day of the murder, his interview with Sergeant Williams or his perpetuated testimony. The record reveals that the questions were limited on cross-examination due to Mr. Murdock's memory issues. It is also noteworthy that counsel for Mr. Stone chose not to cross-examine Mr. Murdock. Accordingly, Mr. Meyers' second assignment of error lacks merit.

### Right to Confront Accuser (Mr. Meyers' Assignment of Error Three and Mr. Stone's Assignment of Error Three)

Mr. Meyers and Mr. Stone assert that Mr. Murdock's failure to independently recall the events surrounding his previous participation in the investigation of Ms. Ketchens' murder violated their right to confront a witness under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Mr. Stone further maintains that his right to confront his accuser was violated by the district court improperly admitting the University Medical Center and Olive Street video surveillance footage. He asserts that the State failed to properly authenticate the videos. We will first address the Confrontation Clause issue.

The district court allowed Mr. Murdock to review his video interview with Sergeant Williams in order to refresh his recollection. During his testimony, the State presented the still photograph from University Medical Center wherein Mr. Murdock identified defendants as the individuals in the photograph.[10] Counsel for

_____

[10] We note that Mr. Murdock's video interview with Sergeant Williams, a transcript of his perpetuated testimony and the still photograph from University Medical Center, upon which Mr. Murdock identifies each defendant, were admitted into evidence. La. C.E. art. 803(5) provides that the hearsay rule does not apply to recorded recollections, which is defined as:

Mr. Horton and Mr. Stone objected to Mr. Murdock's testimony, arguing that their right to confront Mr. Murdock was violated due to his memory issues. The State maintained that it was not aware of Mr. Murdock's memory issues until he began testifying and that defendants still had the ability to cross-examine Mr. Murdock. The district court noted defendants' objections and allowed Mr. Murdock to testify, after which counsel for Mr. Horton cross-examined Mr. Murdock.

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him… ." U.S. Const. Amend. 6. This provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had [] a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365, L.Ed.2d 177 (2004). Only testimonial statements are subject to the Confrontation Clause. *State v. Magee*, 2012-1025, p. 23 (La.App. 4 Cir. 5/22/13), 116 So.3d 948, 962 (quoting *Davis v. Washington*, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (citation omitted). Mr. Murdock testified at trial. While his memory may have been an issue, the defendants were not prevented from cross-examining him. Counsel for Mr. Horton questioned Mr. Murdock extensively regarding his identification of the defendants and his lack of memory regarding the events surrounding the murder. We find Mr. Murdock was present at trial, testified and was subject to cross-examination.

A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence and received as an exhibit but may not itself be taken into the jury room. This exception is subject to the provisions of Article 612.

Therefore, defendants were afforded the opportunity to confront their accuser and there was no violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution. We next consider Mr. Stone's assertion that the video surveillance footage from University Medical Center and Olive Street were improperly admitted into evidence.

Mr. Stone argues the State (1) failed to properly authenticate the videos; (2) did not lay a proper foundation; or (3) produce a witness who could be questioned regarding the reliability and accuracy of the videos. He further asserts that the videos fail to identify him as a perpetrator in Ms. Ketchens' murder. We find his arguments unpersuasive. "A trial court has great discretion in determining whether a sufficient foundation has been laid for the introduction of evidence." *State v. Pollard*, 2014-0445, p. 17 (La.App. 4 Cir. 4/15/15), 165 So.3d 289, 301 (citations omitted). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." La. C.E. art. 901(A). One method for authenticating evidence is testimony by a witness with knowledge that the "matter is what it is claimed to be." La. C.E. art. 901(B)(1). "For admission, it suffices that it is more probable than not that the object is the one connected to the case." *State v. Merrill*, 1994-0716, p. 9 (La.App. 4 Cir. 1/31/95), 650 So.2d 793, 799. Sergeant Williams, the investigating officer, testified that he obtained the University Medical Center and Olive Street video surveillance footage during the investigation into the homicide. He identified the videos as being the video surveillance footage from University Medical Center and Olive Street. Further, a review of the videos and the evidence presented by the State clearly establishes that the videos are connected to this matter. We find Sergeant Williams' testimony

22

sufficient to authenticate the video surveillance footage from both University Medical Center and Olive Street. Therefore, the videos were properly admitted into evidence. Accordingly, Mr. Meyers' and Mr. Stone's third assignments of error lack merit.

***Excessive Sentence (Mr. Stone's Assignment of Error Four)***

Mr. Stone asserts the trial court erred in imposing a sentence of life imprisonment without the possibility of probation or parole. He maintains the district court did not consider any aggravating or mitigating factors prior to imposing sentencing. Mr. Stone argues that the evidence does not support the imposition of a life sentence without the possibility of probation, parole or suspension of sentence. "A [district court] has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion." *State v. Bethley*, 2022-0849, p. 14 (La.App. 4 Cir. 6/21/23), 368 So.3d 1148, 1158 (quoting *State v. Smith*, 2001-2574, p. 7 (La. 1/14/03), 839 So.2d 1, 4) (citation omitted).

Mr. Stone was found guilty of second degree murder, a violation of La. R.S. 14:30.1, which provides that "[w]hoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." La. R.S. 14:30.1(B). Thus, the applicable statute mandates a life sentence for second degree murder. When a crime involves a mandatory sentence, there is no requirement for the district court to justify, under La. C.Cr.P. art. 894.1, a sentence it is legally required to impose.[11] *State v. Reaux*, 2023-0497, p. 9 (La.App. 4 Cir. 3/14/24), 401 So.3d 12, 20, *writ denied*, 2024-00463 (La. 10/23/24), 394 So.3d 1285 (citation omitted). Further,

---

[11] La. C.Cr.P. art. 894.1 outlines sentencing guidelines.

23

Mr. Stone has failed to rebut the presumption of the constitutionality of the mandatory sentence—that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender and the circumstances of the case. *See State v. Johnson*, 1997-1906 (La. 3/4/98), 709 So.2d 672, 676 (citation omitted). "Louisiana appellate courts have repeatedly rejected the argument that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment in the Louisiana Constitution." *Reaux*, 2023-0497, p. 10, 401 So.3d at 20 (quoting *State v. Ivory*, 54,886, pp. 13-14 (La.App. 2 Cir. 1/11/23), 355 So.3d 1157, 1165) (citation omitted). Therefore, we find the district court's imposition of the mandatory sentence of life imprisonment for Mr. Stone's second degree murder conviction is proper. Accordingly, Mr. Stone's fourth assignment of error lacks merit.

**Errors Patent Review**

In accordance with La. C.Cr.P. art. 920, this Court reviews all criminal appeals for errors patent on the face of the record. An error patent is one "that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La. C.Cr.P. art. 920(2). A review of the record reveals one error patent as to each defendant. La. C.Cr.P. art. 873 provides that if "a motion for new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately." Further, the failure to observe the twenty-four hour delay is not deemed harmless error when the defendant does not waive the delay and challenges the sentence. *State v. Francis*, 2019-0227, p. 1 (La.

4/29/19), 268 So.3d 289 (citation omitted). The district court sentenced defendants less than twenty-four hours after denying their motions for new trial and Mr. Horton and Mr. Stone's post-judgment verdict of acquittal. None of the defendants waived the delay and Mr. Stone challenges the constitutionality of his sentence through his motion to reconsider sentence and on appeal. Therefore, the district court erred in failing to observe the twenty-four hour delay between the denial of defendants' motions and sentencing.[12] Accordingly, the defendants' sentences are vacated and remanded for resentencing.

## Decree

After a thorough review of the record, we affirm each defendant's conviction for second degree murder. As the district court erred in failing to observe the twenty-four hour sentencing delay set forth in La. C.Cr.P. art. 873, we vacate the defendants' sentences and remand for resentencing.

**CONVICTIONS AFFIRMED;
SENTENCES VACATED
AND REMANDED FOR
RESENTENCING**

---

[12] Mr. Horton raises this issue as his second assignment of error and Mr. Stone raises this issue as his first assignment of error. Mr. Meyers does not raise the twenty-four hour sentencing delay as error on appeal. However, as Mr. Meyers also did not waive the sentencing delay his resentencing is warranted.